# Bates *et al. v.* Kelly.

*Bill in Equity to Establish Resulting Trust and Remove Cloud on Title.*

1. *Resulting trust ; when arising ; may be established by parol evidence.*—A resulting trust arises, by operation of law, in favor of the person who advances the purchase-money of land, though the title be taken in the name of another ; or in favor of the person for whom it is advanced by way of loan, the title being taken in the name of the lender as security for its repayment ; and this trust, not being within the statute of frauds (Code, § 2199), may be established by parol evidence.

2. *Same.*—The court analyzes the evidence in this case, and holds, as the chancellor held, that the writings fully establish a resulting trust, notwithstanding irreconcilable conflicts in the testimony of the parties.

3. *Purchase with notice of facts out of which resulting trust arises.*—A purchaser of the land from the party in whose name the title is taken, having notice of the facts out of which the resulting trust arises, can not claim protection against it.

4. *Offer to do equity ; what sufficient.*—An offer in the bill to do equity, by paying the money advanced with interest, is sufficient, when it is shown that a prior offer or tender would have been useless, the defendants repudiating the trust sought to be enforced against them.

APPEAL from Jefferson Chancery Court.

Heard before Hon. THOMAS COBBS.

This was a bill in equity exhibited on 4th March, 1882, by George C. Kelly against Horatio B. Tulane and Louis A.

Bates, and alleged, in substance: That on a specified date complainant entered into an oral contract with H. B. Tulane, whereby said Tulane was to advance to complainant, as a *loan*, the sum of $4,050.00 to be expended by complainant in the purchase of a lot in the city of Birmingham and the erection thereupon of a suitable storehouse to enable said George C. Kelly to carry on a hardware business; that complainant was to be allowed from one to five years for the repayment of the amount borrowed, which, meanwhile, was to bear interest at the rate of eight *per centum per annum*, payable in quarterly annual installments; that complainant was to have all benefit of enhanced value of the property and make good to Tulane all loss resulting from its depreciation; that having full confidence in said H. B. Tulane (he being the uncle of complainant's wife), the said Kelly purchased from G. H. Gibson the lot in question for a designated amount, and in order to secure the payment of the money borrowed by complainant, the conveyance was executed directly to said Tulane from said Gibson, and the deed, a copy of which was made an exhibit to the bill, delivered to Tulane *as security* for the repayment of the loan. The bill further alleges that complainant erected on said lot a commodious brick store-house, of which he has had continuous possession carrying on the hardware business therein profitably, and that said lot and improvements have enhanced in value fifty or seventy-five *per cent.* and are daily enhancing in value; and that complainant has complied with his undertaking by paying said interest installments as they fell due. The bill further averred that "about the 19th day of August, 1881, Louis A. Bates, a brother-in-law of said George A. Kelly, and nephew of said Tulane, visited the city of Birmingham, Ala., and went from there to Wetumpka, Ala., where said Tulane resides, and falsely and fraudulently represented to him that said George C. Kelly wished him (said Tulane) to convey said property to him (said Bates,) and under the influence of such false and fraudulent representation, obtained the conveyance of said Tulane to him, conveying said property to him (said Bates); and the said Bates paid (it seems) said Tulane a part of the purchase money for said property, and gave him a mortgage on said land and improvements to secure the balance"—which conveyances were duly recorded, copies thereof being appended to the bill as exhibits. The bill concludes with an offer of complainant to do equity in the premises and offers "to bring into court all the money borrowed by him of said Tulane and interest, to pay up such borrowed money as before stated," and prays that the legal title in said lot of land, &c. be divested out of said L. A. Bates and invested in complainant; that the deed of Tulane and the mortgage of Bates

[Bates et al. v. Kelly.]

to Tulane be declared null and void and cancelled as clouds upon complainant's title; and that said Tulane be required, upon payment to him of the borrowed money, with interest thereon, to make complainant a proper conveyance "freed of said fraudulent conveyance above stated." The defendants demurred to the bill, assigning, *inter alia*, as grounds of demurrer: The statute of frauds: that the bill contained no averment that respondent, Bates, purchased the property in controversy from said H. B. Tulane with knowledge of the alleged equities of complainants in said property; and that the averments of said bill showed that the complainant had not paid into court the amount due said Tulane with interest thereon. The chancellor overruled the demurrers, and answers were filed by each of the defendants. H. B. Tulane, answering the bill, denied that a *loan* was contemplated by him when he advanced to complainant the money used in the purchase of the lot, and the erection of the improvements thereon, and averred the following to be a "true statement" of the facts in relation to said purchase: "On or about the first day of November, 1880, one Jared Bates, the brother-in-law of this respondent, and the father-in-law of the complainant, being desirous of assisting the complainant and his wife, the daughter of said Jared Bates, proposed to this respondent that if he would furnish the money and buy a business lot in the said city of Birmingham, and build a store-house thereon, and would permit the complainant to occupy the said store, as a tenant of this respondent, at an annual rental of eight per cent. upon the actual cost of said lot and store-house, with the joint and not several privilege upon the part of said Jared Bates and his wife, Artemese Bates and George C. Kelly of buying the said lot and store-house, at any time within the five years, by paying to this respondent the actual cost thereof, then the said Jared Bates and his wife would execute to this respondent a mortgage upon a house and lot owned by the said Jared Bates in Wetumpka, Elmore county, Alabama, for the value of said house and lot, which should be held by this respondent, as an indemnity against any loss that he might sustain by reason of the depreciation in value of the house and lot in Birmingham, Alabama." The respondent, Tulane, further alleged that, relying upon the promise of said Jared Bates to indemnify him by mortgage, as proposed, he bought the lot in controversy and erected upon it the brick store house; that said George C. Kelly's connection with the purchase of said lot and the erection of the said improvements was merely that of *agent* for respondent; and "under the terms of the said agreement with said Jared Bates, the said Kelly was to occupy the said store house as the tenant of this respondent at the rental afore-

said ; and to have jointly with Jared Bates and Artemese
Bates the right to purchase said house and lot in the city of
Birmingham as aforesaid ; but the complainant was in no
event to have severally and alone any such right." The said
Tulane admitted writing the letter appended to complainant's
bill as "Exhibit A," (the material portion of which is copied
in the opinion), but alleged that said letter referred to the
agreement that had been made with said Jared Bates ; that
said Bates and wife declined to execute to respondent the
mortgage which they had agreed to execute as aforesaid ; that
thereupon respondent became dissatisfied with his purchase
and sold and conveyed said lot to his co-defendent, L. A.
Bates, and that said sale was not induced by any fraudulent
representation on the part of said Bates. The defence pre-
sented by the answer of respondent, Bates, was practically
identical with that of said Tulane. Upon final hearing, on
pleadings and proof, the chancellor was of opinion that the
evidence adduced (which was voluminous and contradictory)
sustained the allegations of complainants bill, and caused a
decree to be entered granting the relief prayed. The character
of the evidence is sufficiently indicated by the opinion. The
receipt therein referred to, omitting the signature, is in the
following language : "Received of George C. Kelly, eighty
one dollars in full payment of first quarter's interest on pur-
chase money for property occupied by him as a store and
residence up to August 1st, 1881."

The overruling of defendant's demurrers and the decree
rendered, are here assigned as error.

HEWITT & WALKER, and Thos. H. WATTS, SR., for appellants.

JOHN T. TERRY, contra.

SOMERVILLE, J.—It must be admitted that, if Tulane
advanced the money in controversy to the complainant, Kelly,
by way of a loan, and had the title of the land, which was
purchased with it, taken to himself as security for its payment,
he would hold the property upon a resulting trust for Kelly,
and upon the repayment of the amount, would be compelled
to convey, so far as he himself is concerned.—*Rose v. Gibson*,
71 Ala. 35 ; *Boyd v. McLean*, 1 John. Ch. 582 ; *Lehman v.
Lewis*, 62 Ala. 129 ; Perry on Trusts, § 133 ; *Walker v. Elledge*,
65 Ala. 51 ; *Rhea v. Tucker*, 56 Ala. 450. Such a trust, being
one which results by implication or construction of law, does
not fall within the provisions of the statute of frauds, and may
be established by parol evidence.—Code, 1876, § 2199 ; *Har-
den v. Darwin*, 66 Ala. 55.

10

The question of fact, then, presented is, was the money used in purchasing the land invested for and on account of Kelly, or was he acting merely as an agent for Tulane in making the purchase. There is an irreconcilable conflict in the testimony on this point, and the finding of the chancellor is in favor of the complainant Kelly. It is our opinion that his conclusion is correct. The parties litigant are closely connected by affinity, and the litigation originates in a family disagreement. The oral testimony bears the natural and customary impress of these vitiating influences. We give more weight, therefore, to the written memoranda which seem to have passed between Tulane and Kelly, touching the subject. In a letter written by the former to the latter, bearing date May 13th, 1881, and referring to their previous oral agreement, he says: " I am to give you one to five years to pay for the property in, you to pay me 8 *per cent. interest*, quarterly, on $4,050; I to give you all the *benefit of advance* in the property, and you to *make all losses good*, if any." On the first of August, 1881, after Kelly had been in the occupancy of the property for several months, he paid Tulane the first installment under his agreement, and took from him the following receipt: " Rec'd of Geo. C. Kelly eighty-one dollars in full payment of first quarter's *interest on purchase money* for property occupied by him as a store and residence."

The real estate in controversy is situated in the city of Birmingham. It is shown that the lot was bought and the storehouse upon it constructed by Kelly for his own use and occupancy as a merchant. It is no where denied that it was purchased especially for this purpose. It may be that Jared Bates, the father of complainant's wife, as is alleged, agreed to give Tulane a mortgage on certain property in Wetumpka to indemnify him against loss, but this, we think, was done entirely in the interest of complainant, who was intended to be the sole beneficiary of the transaction. The fact that he refused to give the mortgage after the money was advanced was immaterial. The promise was verbal and was not binding upon him in law, and his failure to perform it did not operate to revoke a loan already made to Kelly, or to change its nature.

The letter and receipt of Tulane are utterly inconsistent with the theory that the money was invested on his own account. It is perfectly and naturally reconcilable with the idea that it was designed as a loan to Kelly, who was the husband of his niece. The payment made is described in both writings as a payment of *interest* on the money. Kelly is to have the benefit of any advance in price, and to make good any depreciation in the value of the property below the price paid for it; and he is to have the right to redeem the property within

[Burford, Adm'x v. Steele.]

five years by paying the amount advanced with eight *per cent.* interest, quarterly. The fact that Kelly executed no note or obligation for the money weighs but little in view of the important incident that he had already vested the legal title of the property in Tulane by the conveyance from Gibson, as he alleges, by way of security. The terms of these writings do not harmonize with the view insisted on by defendant's counsel, that Tulane was the real owner of this property, and intended merely to rent it to Kelly. We can discover no element of a lease in the transaction. The chancellor has found that Tulane held the property in trust for the complainant, and as a security for the payment of the money loaned, with interest at the rate stipulated in the written memoranda, and we fully concur with him in this conclusion.

The testimony leaves no room whatever to doubt that the defendant, Louis A. Bates, purchased the property with full information as to complainant's equity in it. He can not, therefore, be protected as a *bona fide* purchaser for value without notice.

The offer in the bill to do equity is sufficient, a good and proper excuse being shown for not having made a tender of the amount, admitted to be due, prior to the filing of the bill. It is made clearly to appear that Tulane had conveyed the property to Louis Bates, and that each of them repudiated the claim set up to it by the complainant. The offer would have been fruitless, and the law never requires the performance of a nugatory act.—*Robbins v. Battle House Co.*, 74 Ala. 499; Willard's Eq. Jur. 297; *Elliott v. Boaz*, 9 Ala. 772.

We discover no error in the decree of the chancellor, and it is accordingly affirmed.