# Park *v.* Lide.

*Bill in Equity by Heir of Deceased Wife, against Surviving Husband, to set aside Foreclosure Sales under Powers in Mortgages.*

1. *Docket memorandum, as decree.*—A memorandum entered on the court docket, "Demurrer overruled," is not the equivalent of a decree, and will not support an assignment of error.

2. *Mortgage on wife's lands; purchase by husband, at sale under power.*—If lands belonging to the wife are subject to a mortgage, which is paid off by the husband with her moneys, the title at once revests in her, discharged of the incumbrance, and a subsequent fraudulent foreclosure, by or in the interest of the husband, by sale under the power, can not affect her rights, or the rights of her heirs on her death; but, if the mortgage is not thus paid, and the husband becomes the purchaser, directly or indirectly, at the sale under the power, although the purchase enures to the benefit of the wife, the land is charged with the amount paid by the husband; and a bill filed by the heir of the wife, claiming the benefit of the purchase, in the nature of a bill to redeem, must offer to reimburse the husband, or, at least, to refund the ratable proportion of the sum paid as between tenant for life and remainder-man.

3. *Variance between allegations and proof; filing bill in alternative.*—Where the bill is filed by the heir-at-law of the deceased wife, seeking to set aside a sale of her land under a power in a mortgage, at which the husband became the purchaser, directly or indirectly, on the ground that the mortgage had been previously satisfied and paid with the wife's moneys, while the proof shows that the mortgage was not satisfied, and that the purchase at the foreclosure sale was made by the husband in good faith, with his own funds, the variance is fatal; nor could the bill be filed in the alternative, so as to authorize relief under either aspect.

4. *Amendment of bill.*—An amendment of a bill, proper in itself, may be allowed even after a reversal and remandment on appeal; but an amendment which would make a new case, or work a departure, can not be allowed, nor alternative averments which would make the bill demurrable.

APPEAL from the City Court of Montgomery, in equity.
Heard before the Hon. THOS. M. ARRINGTON.
VOL XC.

[Park v. Lide.]

The bill in this case was filed on the 17th February, 1886, by Frank W. Lide against Howard P. Park, and sought to set aside three several sales under powers in mortgages, at each of which one Robert E. Park became the nominal purchaser, and his subsequent conveyance of the land to said Howard P. Park, who was his brother. The tract of land had belonged to Alex. W. McDade, who died, intestate, in April, 1877; and he conveyed it by deed of gift, a few days before his death, to his daughter, Janie L. McDade, who, in June, 1877, married Howard P. Park, the defendant in the suit, and died in May, 1878, intestate, and without issue. At the time of the conveyance to Janie S. McDade by her father, the land was incumbered with three mortgages which he had executed; one in her favor, another in favor of Charles McDade, and the third in favor of Lemuel W. Park, who was a brother of said Howard P. Each of these mortgages was foreclosed, by a sale under the power therein conferred, in March, 1878, Robert E. Park becoming the purchaser; and he conveyed to said Howard P. Park, by deed dated October 11th, 1878, on the recited consideration of $2,375.22, the aggregate amount of the mortgage debts, which he had paid as purchaser at the foreclosure sales. The complainant, F. W. Lide, was the half-brother and only heir-at-law of said Janie S. (McDade) Park, and filed the bill in that capacity; alleging that the mortgages to Charles McDade and L. W. Park respectively were in fact paid and satisfied, before the foreclosure sales, with money belonging to the statutory estate of Mrs. Janie S. (McDade) Park, and that the foreclosure sales were a fraudulent device on the part of Howard P. Park to defeat the complainant's rights, and to secure the property for himself. The bill therefore sought to set aside the foreclosure sales on the ground of fraud, and to cancel the deeds to Robert E. Park as the purchaser, and his deed to Howard P. Park, as clouds on the complainant's title to the land; and the general prayer for other and further relief was added. An account was also prayed of certain personal property which was embraced in the deed of Alex. W. McDade to his daughter, and which had gone into the possession of the defendant.

The defendant demurred to the bill, and his demurrer seems to have been overruled; but this is only shown by a memorandum, under the title "Orders of court," in these words: "Octo. 30th, 1886, demurrer overruled." On final hearing, on pleadings and proof, the following opinion and decree was rendered: "The court is satisfied from the evidence that the purchase of the land at the three several mortgage sales was made by Robert Park for and on behalf of Howard Park, his brother.

[Park v. Lide.]

Being at the time the husband and trustee of Janie S., the owner of the land, it would have been inconsistent with his relation and duty to her to become the purchaser of her property for himself, when sold under adverse process; but any money paid by him on such sale, though the title is taken in the name of another, is to be taken and treated as an advance to the wife, and is a proper charge on the land. It is insisted that the money paid at the sale under the Charles McDade mortgage was the wife's money, which was in the husband's hands at the time; but the evidence is so vague and unsatifactory, that the court is unable to reach this conclusion. The court is of the opinion, from the evidence, that the mortgage to L. W. Park was the property of Howard P. Park, the defendant, and was taken in the name of said L. W. merely to facilitate its collection, Howard P. being then a resident of Georgia; and that the amount of this mortgage debt, less the usury, is also a proper charge on the land. But, inasmuch as the law casts a life-estate therein on the husband, on the death of the wife, it operates as a reduction of this charge *pro tanto*. In other words, if the life-estate is worth $1,000, and the reversion is worth $2,000, the charge should be reduced one third. It is therefore referred to the register to take testimony, ascertain and report the value of the life-estate of Howard P. Park in the said land, and the value of the reversion; also, the amount paid on the purchase of the land at the sale under the Charles McDade mortgage, with interest; also, the amount due on the L. W. Park mortgage, with interest, less the usury; and he will also report the amount of charge of Howard Park on said land, as ascertained and fixed by the rule above stated. All other questions reserved."

The defendant appeals from this decree, and here assigns it as error, together with the overruling of his demurrer to the bill; and the complainant below makes a cross-assignment of error, because the court below did not grant him all the relief to which he was entitled.

GRAVES & BLAKEY, for appellant.

WATTS & SON, and TOMPKINS & TROY, contra.

McCLELLAN, J.—This record does not sufficiently present the action of the Chancery Court on the demurrer to the bill, to enable us to review it. No decree in that behalf appears in the transcript. What seems to be a mere docket memorandum of the chancellor is transcribed; but that is not a decree, but a mere direction of the chancellor to the register,

[Park v. Lide.]

which may or may not have been developed into a decree by formal incorporation into the minutes of the court. We can not consider assignments of error based on it.—*Baker v. Swift*, 87 Ala. 530.

This leaves for consideration only the final decree on the merits of the case. The undisputed facts may be stated as follows: At the inception of the transactions involved here, Alex. McDade owned the tract of land in controversy, containg 1220 acres, worth about $2,500. He executed three several mortgages on the land, to secure the payment of debts: one to Charles McDade, May 1, 1875, for $720, of which $250 remained unpaid when the facts involved in this dispute transpired; another to his daughter, Janie S. McDade, April 12, 1876, for $1,125; and a third, to Lemuel W. Park, February 1, 1877, for $728. On April 12, 1877, he executed to his said daughter a deed of gift in fee to this land, covering also his personal property, to take effect on his death, which occurred a few days afterwards. Howard W. Park, a brother of L. W., referred to above, in June, 1877, married Janie S. McDade, who died intestate, and without issue, and leaving no debts, in May, 1878, her husband having in the meantime taken possession of all the personalty, which came to her from her father, and also the tract of land in controversy. Prior to her death, on the 6th and 7th of March, 1878, all of the mortgages were foreclosed under powers of sale contained in them respectively, and at each sale Robert E. Park, another brother of the defendant, became the purchaser, bidding the amount of the mortgage debt in each instance. Each of the mortgagees executed conveyances to him, the deed of Janie S. Park, however, not being joned in by her husband. On October 11, 1878, Robert E. Park conveyed the land to Howard P. Park, on a recited consideration just equal in amount to the aggregate of the several mortgage debts at the time of foreclosure, seven months before. The complainant, Frank W. Lide was a half brother of Janie S. Park, deceased, and her only heir-at law, except the surviving husband.

The bill avers that the defendant, Howard P. Park, before the 6th of March, 1878, had paid off the Chas. McDade and L. W. Park mortgages, with the proceeds of personal property belonging to his wife, but, by collusion with said mortgagees and Robert E. Park, fraudulently, and with intent to cut off the rights of the complainant as the heir-at-law of said Janie S., had these mortgages, though full satisfied, as also that of his wife, foreclosed; that Robert E. Park, as part of the fraudulent scheme, became nominally the purchaser, under an agreement to re-convey to Howard P. Park, but that he

never paid anything whatever for the land thus purchased, to either of said mortgagees. Upon this state of facts, in part confessed, but in other part denied, the theory of the bill is, that the mortgages to McDade and L. W. Park, having been paid with the proceeds of her property, they, as well as the one originally executed to her, belonged to said Janie S. Park; and hence said foreclosures were either absolutely void, and did not pass either the legal or equitable title out of her, or, being made under the supervision of her husband and trustee, were for her benefit, and the conveyances thereunder were in fact and law made to Robert E., in trust for her; and the estate, being so held by him at the time of her death, descended to complainant in remainder, the husband having a life-estate by curtesy. The prayer for final relief is, that the foreclosure sales and conveyances to R. E. Park, and the conveyance by him to H. P. Park, be set aside, and held for naught; that the land be decreed to belong to the estate of Janie S. Park, and that complainant be adjudged entitled to a remainder therein after the death of Howard P. Park.

The decree rendered is not in line with the facts thus alleged, nor does it round out the theory of the bill, or provide for the relief prayed. On the contrary, it adjudges that the facts alleged have failed of proof; it finds another and different state of facts to be supported by the evidence; and it responds to that other and different state of facts, and grants relief which, whether appropriate to the facts found or not, is not appropriate to the facts alleged.

We quite agree with the chancellor, that the testimony does not establish that Howard P. Park paid off the McDade and Lemuel Park mortgages before foreclosure, out of the proceeds of the wife's property. We are also of the opinion, that all the mortgages were subsisting incumbrances on the land, at the time they were severally foreclosed. Nor can we find justification in this record for the belief that the transactions involving the foreclosures, whether Robert E. or Howard P. Park was the real purchaser thereat, were infected with any covinous intent to cut off the rights of Lide as the contingent heir of Janie S. Park, if, indeed, he can be said to have had any rights during her life. We can discover no sufficient motive for such an effort, in view of the youth, health and pregnancy of Janie S., giving promise not only of long life, but of issue in the near future. It is more reasonable to suppose, as one of the of the parties testified, that "Frank W. Lide was not thought of at that time", or in that connection; and there is no evidence to the contrary.

These conclusions leave open the question, whether the

[Park v. Lide.]

purchase by R. E. Park at the foreclosure sales was a *bona fide* purchase by him on his own account, or was made as the agent, in the interest of, and under an agreement to re-convey to H. P. Park. However that question may turn on the evidence, its determination can not support the only relief which would be responsive to the allegations of the bill. The largest relief the complainant could be entitled to, on account of Howard P. Park becoming, directly or indirectly, the purchaser at the foreclosure sales, would be to have the land decreed to him, charged with the amount Park had paid in removing the incumbrances; or, at least, with such part thereof as should be paid by the tenant in remainder, the balance being charged against the life-estate (*Clark v. Cantwell*, 3 Head (Tenn.) 202), and a bill to this end would be in the nature of a bill to redeem, and without equity unless it offered to reimburse the purchaser. On the other hand, if the mortgages had been paid by the application to them of proceeds of the wife's separate property, the legal title *eo instanti* revested in her, was in her at the time of her death, and then passed into her heirs. Nothing that the husband did, after such revesting, in fraudulently foreclosing the satisfied mortgages, nor any expense he might have incurred or paid in that fraudulent consummation, could have affected the rights of the wife or her heirs, or operated any charge upon the land as against her or them. Had these been the facts shown in the testimony, as they are the facts, and the only facts, alleged in the bill as a predicate for relief, the complainant would, we do not doubt, have been entitled to have all conveyances based on the foreclosure sales set aside, and the land decreed to belong to him in remainder over after the falling in of Park's life-estate. But the facts are not proved. The facts which are proved, authorize a different kind and measure of relief. The allegations, in other words, are not sufficient to authorize the relief granted, nor is the proof sufficient to support the relief prayed. This state of things involves a variance between the averments and the proof, which is fatal to the decree; the rule in this respect being especially stringent in those cases in which, like the present, the complainant relies upon the fraud of his adversary.—1 Daniell's Ch. Pr. & Pl. 36, *et seq.*, 383; *Wilde v. Gibson*, 1 H. L. Cas. 605; *Glasscott v. Long*, 2 Phil. 310, 322; Story's Eq. Pl. § 42, and note; *Winston v. Mitchell*, 87 Ala. 395; *Dexter v. Ohlander*, 89 Ala. 262; *Patton v. Beecher*, 62 Ala. 579; *Winter v. Merrick*, 69 Ala. 86.

We are unable to see how the present bill can be amended, so as to authorize the relief to which the facts proved would

entitle the complainant, withont a departure from the case originally presented. It is true, that an amendment, proper in itself, might be allowed, even after reversal of a final decree ( *Winter v. Merrick*, 69 Ala. 86); but at no time is it competent to make a different case by amendment. If, in addition to what the bill now contains, the case had also been presented in the aspect developed by the evidence, very clearly, the complainant would not have been entitled to the same relief in either phase of his bill thus set forth; and had the bill been taken as confessed, the court could not have responded to both aspects. This is the test to determine whether different states of fact may be presented together; and if the relief which is appropriate to one state of facts, is not that also which the alternative averments demand, a demurrer will lie. Had the facts in evidence been laid in the bill alternatively, with the averments the bill now contains, the case would have been one in which, in one aspect, title to the land, freed from all incumbrances, would have been in Janie S. Park, before and at the time of the sales, the foreclosures would have been utter nullities, and the fee, at her death, would have passed into her heirs; and, in the other aspect, the mortgages were subsisting, the foreclosures valid, and the purchases thereat would be held to have been made for Janie S. Park, in such manner, however, as to charge the land, even as against her, with the sums paid in satisfaction of the mortgages. In the case alleged, the complainant succeeds to, and claims under, the absolute title of Janie S. Park; and the *gravamen* of his bill is, that a cloud has been put on that title, through the fraud of Howard P. Park. In the case proved, the complainant succeeded to, and claims under, the right of Janie S. Park to divest the legal title out of Howard P., upon the payment to the latter of the sums he had paid in purchasing at foreclosure sales. Not only, therefore, is the title relied on by complainant in the two aspects of the case presented by the bill and proof respectively, entirely different, but the conditions of relief are wholly unlike. The defenses open to defendant in these different aspects would be essentially dissimilar. In the one, he could defeat recovery, by showing that the mortgages were valid and subsisting charges on the land at the time of foreclosure, and, as such, were foreclosed in good faith; while, in the other, these facts would not avail him, but he would be further required to show that he did not himself either purchase at the sales, or redeem from the purchaser thereat, at least during the life of his wife, directly or indirectly; for, in either case, he would be held to have acted as her trustee, and be entitled only to reimbursement, apportioned, it may be, on equitable principles between the life-estate and the remainder in fee.

So it is, we think, clear that the right asserted, the defenses against the right as asserted, and the relief to which the complainant would be entitled on proof of the right asserted, are each and all different from the right, defenses and relief arising from and incident to the facts which are proved; and the two states of fact could not be alleged alternatively in the same bill.—*Caldwell v. King*, 76 Ala. 149; *Gordon v. Ross*, 63 Ala. 3; *Lehman v. Meyer*, 67 Ala. 396; *Moog v. Talcott*, 72 Ala. 210; *Wood v. Patton*, 75 Ala. 205; *Globe I. R. & Co. v. Thacher*, 87 Ala. 458.

A matter which could not have been originally alleged in the alternative, can not afterwards be introduced into the bill by amendment. To do so would be a departure from the cause of action first presented, and is not allowed even under our liberal statute of amendments.— *Wood v. Patton, supra; Ray v. Womble*, 56 Ala. 32.

The present bill, therefore, could not be amended upon a remandment of the cause, so as to authorize the relief appropriate to the facts established by the evidence. Hence the decree will be reversed on the assignment of H. P. Park, and the bill dismissed. The costs of both appeals will be taxed against Frank W. Lide, and the judgment in his appeal will also go against the sureties on his bond for costs.

Reversed and rendered.