# Winston *v.* Mitchell.

*Bill in Equity to establish Resulting Trust in Lands, or hold Purchaser liable as Trustee in invitum.*

1. *Amendment of bill; when allowable.*—An amendment of a bill is properly allowed (Code, § 3449), when the matters of the amendment might have been stated in the alternative in the original bill.

2. *Same; resulting or constructive trust in lands.*—Where the original bill sought to establish a resulting trust in lands, which the defendant had bought at a sale under execution, taking the title in his own name with the word *agent* added, alleging that he made the purchase for the benefit of the complainant, who was his daughter, under an express agreement with her, and bought the judgment with the proceeds of her bank stock; an amendment may be allowed, alleging that her bank stock was partly used in the purchase of the judgment, or

[Winston v. Mitchell.]

in part payment for the land, seeking to hold the defendant liable as a trustee *in invitum,* and to fasten a lien on the land to the extent of the bank stock so used.

3. *Same; statute of limitations.*—When an amended bill does not bring forward any new claim or matter, but only varies the allegations as to a subject within the *lis pendens,* the statute of limitations runs only to the filing of the original bill.

4. *Amendment of decree after appeal sued out.*—When a decree is rendered in vacation by consent, and an error in the allowance of interest is corrected at the next ensuing term, after an appeal has been sued out, this court will consider the decree as thus amended, and will not reverse on account of the error in the allowance of interest.

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. WM. H. TAYLOE.

The bill in this case was filed 1st February, 1887, by Mrs. Martha A. Mitchell, a married woman, against her father, A. A. Winton, and her husband, Daniel Mitchell; and sought to establish and enforce a resulting trust in her favor in several tracts or parcels of land, which had belonged to her husband, and had been sold under execution against him, A. A. Winston becoming the purchaser, and taking the titles in his own name, but with the word *agent* added in each deed. The lands were sold on the 6th June, 1881, by the United States marshal, under an *alias* execution issued on a judgment of the Circuit Court of the United States at Mobile, in favor of Mrs. Catherine Moore, against said Daniel Mitchell, for $6,350.44, as affirmed by the Supreme Court on appeal; and said Winston was surety for Mitchell on the *supersedeas* bond. The grounds on which the complainant sought in her original bill, or as first amended, to establish a resulting trust in the lands, are fully stated in the former report of this case.—87 Ala. 395–405. On that appeal, this court reversed the chancellor's decree, and remanded the cause, "that complainant may amend her bill, as she may be advised, to meet the state of the evidence, and the defendant be allowed to set up any defense which may be regarded as available."

After the remandment of the cause, the bill was amended both in its allegations and prayer, as follows:

*Par.* 5. (*Original bill.*) "On or about April 17th, 1878, said judgment against said Mitchell was transferred to said Winston, for the sum of $6,811.12, including costs of suit, which sum was derived by him from the proceeds of complainant's said statutory separate estate [shares of stock in the Gainesville National Bank]; and she alleges that said transfer to said Winston was made to him as her agent, for the purpose of saving the land of her husband, and buying the same in for herself, in case the same was sold under execution on said

judgment, which said Winston well knew, agreeing to assist her in effecting that end, and advising her therein, and using her statutory separate estate therefor." (*Amended.*) "On or about April 17th, 1878, said judgment against said Mitchell was transferred to said Winston, for the sum of $6,811.12, including costs of suit; and your oratrix alleges that said judgment was purchased for her benefit and his own protection, and that she afterwards in part reimbursed said Winston by a transfer to him of her said bank stock, and the payment of a note for $6,400, from the proceeds of her said bank stock; her purpose being to save the land of her husband, and buy the same in for herself, in case the same was sold under execution on said judgment, which said Winston well knew."

*Par.* 6. (*Original bill.*) "After that time, an *alias fi. fa.* was issued on said judgment, and levied upon said lands, together with some personal property; and said land was sold by the U. S. marshal under said *fi. fa.*, and the same was bought in by said Winston as her agent, at the price of $4,572.50; and the three several deeds made to him show that he bid for it as agent, paid for it as agent, and took the title to himself as agent. Your oratrix alleges that said judgment was her own, that she furnished the money to pay for it, that the land was sold under the *fi. fa.* for the purpose of putting the title thereto in her, and that said Winston bid, bought, paid for, and got title thereto as her agent and trustee, and by her said means." (*As amended.*) "After that time, an *alias fi. fa.* was issued on said judgment," levied, &c., "and said land and personal property was sold under said *fi. fa.*, for an amount less than $6,400, the amount so reimbursed to said Winston by your oratrix; and said land alone was bought in by said Winston at the price of $4,572.50, using in said purchase the judgment so transferred to him, which sum was much less than the amount of money remaining in his hands belonging to your oratrix after the sale of the personal property; and the three several deeds made to said Winston show that he bid for it as agent, paid for it as agent, and took the title to himself as agent. Your oratrix alleges that, on account of the use of the *corpus* of her separate estate for the payment of the debts of her husband, said Winston became a trustee *in invitum* for her benefit."

*Par.* 9. (*Original bill.*) "Your oratrix alleges that said Winston now claims said land as his own, in his individual right, and not as the agent or trustee of your oratrix, and refuses to make title thereto to your oratrix; and said Winston has, since said sale, been receiving the rents, income and profits from said land, and appropriating them to his own.

use." (*As amended.*) "Your oratrix alleges that said Winston now claims said lands as his own, in his individual right, and not as the trustee of your oratrix, and denies that the same is subject to any lien in her behalf."

*Par.* 10. (*Original bill.*) "The rents, income and profits of the said estate have never in any manner been appropriated by her said husband, Daniel Mitchell; and your oratrix alleges that said rents, income and profits should be decreed to be a part of the *corpus* of her statutory separate estate." ·(*As amended.*) "Your oratrix alleges that she is entitled to recover the *corpus* of her separate estate which went into the hands of said Winston, and was used by him in the purchase of said land, with interest thereon; that the said Winston is a trustee *in invitum* in her behalf, and for her benefit, and that she has a lien upon said lands for the amount of her separate estate thus invested."

*Prayer for relief.* . (*Original bill.*) "That said lands be decreed to be the property of your oratrix from the time of said purchase at the marshal's sale; that said Winston be compelled to convey said land absolutely to your oratrix, and to surrender to her the possession thereof; that your oratrix have decreed to her, under an account to be stated, the rents, income and profits of said lands, as against said Winston, from the time of his said purchase as agent, for which she may have execution; that the said rents, income and profits, as well as the land, be decreed to be *corpus* of her statutory separate estate;" and the general prayer was added. (*As amended.*) "That said Winston be decreed to be a trustee *in invitum* in behalf and for the benefit of your oratrix; that a lien be declared to exist upon said lands, in favor of your oratrix, to the extent of her estate invested therein, with interest thereon; that it be referred to the register to ascertain and report to the court the amount due your oratrix thereon, and that said land be decreed to be sold for the satisfaction thereof;" and the general prayer was added.

The defendant Winston demurred to the bill as amended, assigning fifteen grounds or causes of demurrer, which were, in substance, (1) that the amendment made a new case; (2) that the claim presented by it was barred by the statute of limitations and lapse of time; and (3), to the sixth paragraph, that its allegations were involved, uncertain and inconsistent. The defendant also pleaded the statute of limitations to the bill as amended, and re-asserted his answer to the original bill, denying that the complainant's bank stock, or its proceeds, was used by him in the purchase of the judgment or the lands. The chancellor overruled the demurrer and the

[Winston v. Mitchell.]

plea, and, on final hearing on pleadings and proof, rendered a decree for the complainant, declaring a lien on the lands in her favor for $11,136. The defendant appeals, and assigns each decree as error.

PILLANS, TORREY & HANAW, for appellants.—(1.) The amendment worked a radical departure from the original bill, and ought not to have been allowed.—*Ray v. Womble*, 56 Ala. 32; *Park v. Lide*, 90 Ala. 246; *Glass v. Glass*, 76 Ala. 371; *Ward v. Patton*, 75 Ala. 207; *Heyer v. Bromberg*, 74 Ala. 524; *Gordon v. Ross*, 63 Ala. 363; *Howell v. Motes*, 25 Ala. 1; *Adams v. Phillips*, 75 Ala. 461; *Seals v. Robinson*, 75 Ala. 363; *Tillman v. Thomas*, 87 Ala. 321; *Globe Iron Co. v. Thacher*, 87 Ala. 464; *Rapier v. Paper Co.*, 69 Ala. 476. (2.) As a bill to hold Winston as a trustee *in invitum* for intermeddling with complainant's bank stock, the amendment was barred by the statute of limitations of six years.—*Sullivan v. Lawler*, 72 Ala. 76; *Nettles v. Nettles*, 67 Ala. 699; *Underhill v. M. F. D. Ins. Co.*, 67 Ala. 45; *Martin v. Br. Bank*, 31 Ala. 121; *Mohr v. Lemle*, 69 Ala. 180; Buswell on Limitations, § 324. The bank stock ceased to exist by the bank's liquidation in January, 1880, when defendant receipted for the money arising from it. (3.) The $6,400 was never repaid by complainant, with her stock or its proceeds, but the proceeds went to pay other debts of Mitchell to the bank. (4.) If complainant was entitled to recover at all, her right was limited to the $6,400, with interest from February 23d, 1887. (5.) The decree takes no account of the Frost or the Long place, for which a credit ought to have been allowed, or they should be re-conveyed to the defendant. 87 Ala. 405. (6.) As to the uncertainty in the averments, see *Duckworth v. Duckworth*, 35 Ala. 70; 75 Ala. 368.

A. G. SMITH, and T. B. & R. P. WETMORE, *contra*, cited *Winston v. Mitchell*, 87 Ala. 395; *Conner v. Smith*, 88 Ala. 300; *Stein v. Robertson*, 30 Ala. 286; *Bass v. Bass*, 88 Ala. 408; *Nettles v. Nettles*, 67 Ala. 599; *Meyer v. Mitchell*, 75 Ala. 475; *Seals v. Robinson*, 75 Ala. 363.

CLOPTON, J.—We shall first consider the questions arising on the demurrer to the bill as amended after the cause was remanded on the former appeal. Except as to the statute of limitations and the vagueness and uncertainty of averments, the several grounds of demurrer may be comprehended in one general cause—namely, that the amendment introduces a new cause of action, makes a new case, and is a radical departure

[Winston v. Mitchell.]

from the scope, objects and prayer of the original bill, as first amended. The special assignments of demurrer are specifications of the particular matters in which the pleader alleges the departure consists.

Prior to the enactment of the statute of amendments in equity, complainants who had just causes of action, and title to relief, were often defeated, because of the insufficiency of the statements of the bill, or a variance between the allegations and proof, or the inconsistency of the case established by the evidence with that made by the bill, resulting from the existing rule of practice, that the allowance of amendments curing defects other than merely formal, after the cause was at issue, rested in the discretion of the chancellor. To remedy this evil, a statute broad and liberal was adopted, declaring, "Amendments to bills must be allowed at any time before final decree, by striking out, or adding new parties, or to meet any state of evidence which will authorize relief."—Code, § 3449. To prevent other and as great evils—the embarrassment of defendants in making defense, and confusion in the administration of justice—the statute was construed not to allow the introduction of an entirely new cause of action or case, or an entire change of parties. Within this limitation, reasonably construed, an amendment which is designed to cure mistakes, errors, or insufficiencies in the allegations of the bill, or vary them as to a subject already in issue, so as "to meet any state of the evidence which will authorize relief," should and must be allowed. The limitations on the right to amend should not be so rigorously applied, as to defeat the remedial purpose and just policy of the statute.

Whether an amendment falls within the limitations on the exercise of the right is sometimes a subtile and difficult matter, requiring nice discrimination. The usual tests are, whether the original and amended bills found the right of complainant to relief on different and consistent titles (*Penn v. Spence,* 54 Ala. 35); or present entirely new or inconsistent claims, based on differing state of facts (*Ward v. Patton,* 75 Ala. 207); or, whether the kind or character of relief, not the degree or extent, appropriate to one state of facts is inappropriate to the other; or whether the same defenses are applicable.—*Park v. Lide,* 90 Ala. 246; *Caldwell v. King,* 76 Ala. 149. In other words, whether the matters of the original and amended bills could have been properly stated in the alternative, in the original bill.

So far as material in considering the propriety of allowing the amendment, the allegations of the original bill are, substantially, that a judgment for several thousand dollars, which had

been rendered against the husband of complainant, and for which defendant was liable as a surety, was purchased and paid for with the proceeds of one hundred shares of the capital stock of the Gainesville National Bank, the statutory separate estate of complainant, and transferred to defendant as her agent, to be used in the purchase of the lands of her husband for her benefit, if they were sold under execution on the judgment; that the lands were subsequently sold under execution, and purchased by defendant as her agent, and for her benefit, using the judgment in payment of the purchase-money, and the deeds taken in his own name as agent. The special prayer is, that the lands be decreed to be the property of complainant, defendant be compelled to surrender possession and convey them to her, and that an account of the rents, income and profits be taken. There is, also, a prayer for general relief. The amendment alleges that the judgment was purchased and transferred to defendant for the benefit of complainant and his own protection, and that complainant reimbursed him, on account of the purchase of the judgment, the sum of sixty-four hundred dollars with the proceeds of her bank stock. It strikes out the averments in the original bill as to the rents, income, and profits, and alleges the right to recover the *corpus* of her separate estate invested in the lands, and substitutes for the special prayer that defendant be decreed a trustee *in invitum*, and a lien be declared on the lands to the extent of her separate estate invested therein.

When this case was here on former appeal, we came to the conclusion, after a careful review and consideration, that the sum paid by complainant to the defendant was less than the amount paid by him for the judgment, and, therefore, a trust of the legal estate in the entire lands did not result. But we were, also, of opinion that a constructive trust arose in favor of complainant, to the amount of the funds of her separate estate used in reimbursing defendant on account of the purchase of the judgment, with which she was entitled to charge the lands; and remanded the cause that complainant, if so advised, might amend her bill to meet this state of the evidence.—87 Ala. 395. It seemed to us, at that time, that the bill was amendable, and upon further consideration and investigation we have found no cause to change the first impression. It is true, the original bill proceeds on the ground that the judgment was purchased and wholly paid for with funds of complainant's separate estate; and the amendment proceeds on the ground, that only a part thereof was so paid. Notwithstanding this variation of allegations, the subject-matter of the amended and original bills is the same; the cause of

action is unchanged; the same character of relief is appropriate to the facts stated in both, differing only in extent, and the same defenses are applicable.

We do not understand, as counsel for appellant insist, that complainant by the amendment has abandoned her claim, that the judgment was purchased and transferred for her benefit for the purpose of buying the lands, and now proceeds against defendant as for a conversion of her bank shares, seeking to subject lands bought by defendant for himself, to sale for her repayment. Such is not the theory of the amendment. By its allegations, complainant virtually ratifies the conversion, if any, and the use of her money in part reimbursement of defendant; and bases her right solely on the use of the judgment in purchasing the lands. Had the averments of the original bill been established by the proof, complainant would have been entitled, at her election, to have decreed a resulting trust in the legal estate in the entire lands, or a trust and lien fastened on them for her repayment.—*Morgan v. Morgan*, 66 Ala. 80. And on the allegations of the amended bill, she is entitled to have a trust and lien fastened on the lands for the repayment of the amount of her separate funds invested in them, which trust and lien extend to the whole lands. *Lewis v. Montg. Mu. B. & L. Asso.*, 70 Ala. 276. We regard the amended bill, not as introducing a new cause of action, a radical departure from the cause of action upon which the original bill was founded, but as varying the allegations as to a subject already in issue, so as to meet a state of the evidence which authorized relief.—*Stein v. Robertson*, 30 Ala. 286; *Johnson v. Frowner*, 28 Ala. 580; *Conner v. Smith*, 88 Ala. 300; *Pitts v. Powledeye*, 56 Ala. 147; *Shelby v. Tardy*, 84 Ala. 327.

The general rule is, that an original and amended bill form one entire bill, the amendment being regarded as having relation to the commencement of the suit. True, when any new claim or matter is introduced, this rule does not operate to deprive the defendant of the right to insist upon the statute of limitations, if the bar is complete when the amendment is allowed; but, when no new matter or claim is introduced, the allegations being varied as to the subject within the *lis pendens*, then the statute will run only to the filing of the original bill.—*King v. Avery*, 37 Ala. 169; *Adams v. Phillips*, 75 Ala. 461. The original bill was filed in less than six years after the purchase of the lands, and, as we have shown, the amendment introduces no new claim, or cause of action.

On the former consideration of this case, we reached the conclusion, from the evidence then before us, that defendant

borrowed, or advanced by request of complainant, the money to purchase the judgment, and that the note for sixty-four hundred dollars was given to reimburse him in part; also, that complainant's certificates of stock were sent to him with this note, and the proceeds thereof applied to its payment. The reasons for this conclusion are fully stated in the opinion then delivered; repetition is unnecessary. A material controverted question was, on the former appeal, as now, whether the proceeds of the stock were applied to the payment of this note, or Mitchell's notes held by the Gainesville bank. We then said that the evidence could be reconciled only on the theory, "that there was some unexplained connection between the settlement of Mitchell's notes with the Gainesville bank and the payment of the note for $6,400." We did not mean by this, that the latter constituted any part of Mitchell's indebtedness to the bank, but simply some undisclosed connection as to their *settlement*, or *payment*. Consideration of the evidence taken since the bill was amended, in connection with that previously taken, confirms our former conclusions. Defendant's version is, that upon an adjustment of their business matters in December, 1879, Mitchell made three several notes of specified amounts, for the purpose of raising money by discounting them, with which to pay the balance of his indebtedness to the Gainesville bank, after appropriating thereto the proceeds of complainant's bank stock, and also the note for $6,400; and that the note was paid with money secured by discounting these several notes. Admitting that such arrangement was made between Mitchell and defendant, there is no pretense that complainant was a party, or consented to the same. As shown by the statement of defendant in various letters, her stock was pledged as collateral security for the note given by her which was held by the Mobile Savings Bank, and defendant and her husband could not apply it otherwise, at least, without her consent. Independent of this, the payment of. the note with the money raised by discounting the notes of Mitchell is inconsistent with other evidence.

Passing a comparison of the statement of defendant, that some of the notes made by Mitchell in December, 1879, were discounted in the National Commercial Bank, with the testimony of Pope, the book-keeper, that the notes of Mitchell of corresponding amounts discounted by that bank, on account of defendant, were, dated December 17th, 1881; we will allude briefly to some of the salient points of the evidence as to the money with which Mitchell's notes to the bank and the note for $6,400 were respectively paid. On the books of the

Gainesville bank, two accounts were kept with defendant, one his individual account, and the other as banker, either he, or the National Bank of which he was president, being the fiscal agent in Mobile of the Gainesville bank, which went into voluntary liquidation in 1879. It appears from the testimony of Woodruff, the cashier of the Gainesville bank, that Mitchell's notes were charged January 6th, 1880, to "A. A. Winston, banker's account," and credited to bills discounted; and that on the 16th of the same month, defendant deposited in the National Commercial Bank the sum of $20,000.65 to the credit of the Gainesville bank, which sum was credited to defendant on his banker's account, the notes of Mitchell and others being itemized in the credit. The witness then states, "the notes were in this way settled so far as Mitchell was concerned, on the 6th January, 1880, and became charges against A. A. Winston, indorser." While the evidence does not show from what sources defendant obtained the money thus deposited, it is apparent that no part of it consisted of the proceeds of complainant's stock, unless it be sixteen hundred dollars, which defendant received January 15th, 1880, on account of twenty shares, and that a large part of the Mitchell notes was paid out of this deposit, and with the individual money of defendant. This is manifest from defendant's letter of March 15th, 1885, to complainant, wherein he writes: "I paid the Gainesville bank with my money for Mr. Mitchell on his notes that I was security for," stating four several sums amounting in the aggregate to $7,912.85.

According to the defendant's own testimony, he paid the note for $6,400, less the interest, February 28th, 1880, though not then due, by a check on the National Commercial Bank, and on the next day gave the bank a receipt for sixty-four hundred dollars on eighty shares of complainant's stock, and subsequently wrote across the face of the note, "paid by 80 shares, $6,400 of it, Martha A. Mitchell bank stock." It is said, however, that the receipt to the Commercial Bank specifies on its face, "Cr. on D. Mitchell's notes." What notes? By reference to the check, with which he states the note for $6,400 was paid, we find that it is directed as follows: "Pay to D. M. note, or bearer." From the payment of the note and the receipt of the money from the bank cotemporaneously, as may be said, the inference seems irresistible, that the receipt and check refer to the same note, and, also, that it was paid with the proceeds of eighty shares of complainant's stock. The only explanation given by defendant of the entry on the note is, "a careful examination of the entries and papers connected with these matters, which I have had to make since

this suit was commenced, satisfies me that such indorsement was an error, doubtless made at the time under a confusion of ideas as to the relation which the matters connected with the Mitchell matters bore to each other." This can scarcely be regarded satisfactory. It must be admitted that the testimony is irreconcilable in many respects, and it is not our purpose to impugn the motives or veracity of any witness. The differences have no doubt grown out of the imperfections of memory and confusion of circumstances. In such case, the mind, unable to reconcile the discrepancies, recurs with reasonable satisfaction to the entry on the note as to the character of the funds with which it was paid, made when the facts were known and fresh, especially when consistent with and corroborated by other writings made at or near the same time, such as the check and receipt.

The decree from which the appeal is taken was rendered and enrolled Sept. 10th, 1890. The appeal was granted and *supersedeas* bond given Oct. 17, 1890. During the ensuing term of the court, but after the appeal was taken, the chancellor, on application of complainant, amended and modified the decree, so as to charge defendant with interest from February 28, 1887, instead of from June 6, 1881. True, the rule of practice provides, that when a decree is rendered in vacation, either party may apply for a re-hearing by the second day of the next ensuing term of the court; yet, whether an amendment or modification of the decree after an appeal has been taken comes within the operation of the rule, is at least questionable. In the decree from which the appeal is taken, there is error. The effect of a judgment of affirmance, without correcting the decree, would be to affirm it as it was when the appeal was taken—an erroneous decree. We shall, therefore, adopt the safer course, correcting the decree in the manner amended by the chancellor, and affirm it as corrected.

Appellant will pay the costs of appeal in this court, and each party will pay one-half of the costs of appeal in the Chancery Court. No damages will be allowed.

Corrected and affirmed.