(122 So. 432)

**RUDULPH v. BURGIN et al. (6 Div. 239.)**

Supreme Court of Alabama. May 2, 1929.

Rehearing Denied May 30, 1929.

Rudulph & Smith, of Birmingham, for appellant.

Murphy & Hanna and Marvin Woodall, all of Birmingham, for appellees.

SAYRE, J. In its original form appellee's bill sought relief on the averment—to state the substance of the bill very briefly—that her intestate, who was her husband and the father of her infant children, who are named as joint party complainants, while insane and mentally incompetent attempted to convey described parcels of land to appellant, but that his conveyance was wholly void and of no effect. In her amended bill appellee—so to speak of Pauline E. Burgin—complained "individually and as administratrix" and the minor children are joined as suing by their next friend, the complainant above named. The substance of the bill is then stated as follows: It is averred that intestate for months preceding his death was involved in great financial difficulties; that he and appellee executed to Annie M. Perdue a mortgage of the described parcels of land; that the mortgage was foreclosed; that M. E. Johnson became the purchaser; that intestate and appellee Pauline E. Burgin applied to appellant Rudulph for help against the time, then near at hand, when their statutory right of redemption would expire by limitation; that appellant thereupon agreed that, if Burgin and appellee would execute and deliver to him (Rudulph) a transfer and assignment of their right of redemption, he would furnish the money to redeem upon the understanding and agreement that, upon repayment, he would reconvey to Burgin or appellee as he

might be directed; that the money was furnished and redemption effected by appellant, to whom intestate and appellee executed and delivered a "transfer and assignment of such statutory right of redemption"; that appellant took from M. E. Johnson a conveyance of the property, since when he has been in possession; that since the death of intestate appellee conferred with Rudulph, who "did on various occasions in these conferences advise the sale of said lands and state to the said Pauline E. Burgin that the land should be sold, his money repaid him, and the balance made available for her and her children"; that, shortly after the assignment of the right of redemption was delivered to appellant, he did deliver to appellee an agreement in the form of a letter in which, after referring to the assignment and describing the lands, he said, "In consideration of your assignment of same will be held for you subject to my agreement"; that appellant now refuses to recognize the right of appellee and her children. Other facts are set forth in the bill; but we have stated what we conceive to be the legal substance thereof. Complainants submit themselves to the court and offer to do full equity. The special prayer of the original bill was that the "said alleged, purported, or attempted conveyance"—meaning the conveyance by Burgin and appellee—be vacated and declared to be void and of no legal effect. The special prayer of the amended bill is that a decree be made declaring appellant to hold the lands as trustee for complainants subject to a lien in his favor for amounts advanced by him with lawful interest and charges and that appellant be directed to execute and deliver to complainants "or to such of them as the court may determine" a conveyance of the lands in question upon the payment of the amount due appellant. There is also the general prayer for relief.

We have thus been at pains to state the substance of the original and amended bills, for, upon the facts so stated, or upon the difference between the two, depends the answer to at least one of appellant's serious contentions, which is that the amended bill exhibits a radical departure from the original bill such as the law of amendment will not permit.

The purpose of the bill in both its original and amended forms is to recover the lands described for appellee and her children, the widow and heirs at law of the deceased grantor. The original bill was obviously defective and demurrable in several particulars. Most important of these is the absence of an averment to show whether defendant entered into the transaction with appellees' intestate with or without notice of the latter's alleged insanity (Alexander v. Livingston, 210 Ala. 420, 98 So. 281), but that is of no consequence now (Fite v. Kennamer, 90 Ala. 473, 7 So. 920), for the substance of that bill was eliminated by the amendment, and the question now is

whether the amendment bringing new matter into consideration was properly allowed—worked a radical departure, as the common expression is. We have a host of adjudicated cases bearing on this subject. Both parties have been able to cite cases which tend to support their respective contentions. That an essentially new and different case, working a radical change in the purpose of the suit, should not be allowed by amendment, would appear to be quite clear. But puzzling difficulties arise in determining what constitutes an essentially different case. The statute (Code, § 6558) provides that: "amendments to bills in equity may be filed as a matter of right"—herein changing the common law of equity, so to speak—"at any time before final decree * * * to meet any state of evidence which will authorize relief." As disclosing the operation and effect of this statute, we quote from Winston v. Mitchell, 93 Ala. 559, 9 So. 552: "The usual tests are, whether the original and amended bills found the right of complainant to relief on different and consistent [or inconsistent?] titles (Penn v. Spence, 54 Ala. 35); or present entirely new or inconsistent claims, based on differing state of facts (Ward v. Patton, 75 Ala. 207); or, whether the kind or character of relief, not the degree or extent, appropriate to one state of facts is inappropriate to the other; or whether the same defenses are applicable. Park v. Lide, 90 Ala. 246 [7 So. 805]; Caldwell v. King, 76 Ala. 149. In other words, whether the matters of the original and amended bills could have been properly stated in the alternative in the original bill."

As we have stated, the original bill was fatally defective. It failed to state whether appellant had notice of the alleged insanity of appellee's intestate. The simple averment was that appellee's intestate was "a person of unsound mind and mentally incapacitated for the transaction of business." The prayer for relief was that the court "decree said alleged purported or attempted conveyance to be void"—a relief that the complainant on the facts there alleged could in no event have in equity. But that fact ought not to stand in the way of relief on the amended bill which averred facts justifying relief of like character with that sought by the original bill, for the "amendment merely varied the details of one and the same transaction." Milner v. Stanford, 102 Ala. 277, 14 So. 644. In Harton v. Amason, 200 Ala. 596, 76 So. 954, the court, referring to King v. Livingston Mfg. Co., 192 Ala. 269, 68 So. 897, said: "As remarked in that case, the alteration of the theory upon which a result is to be reached, although new facts are interjected, is not a departure which is obnoxious to the rules of equity procedure." In A., T. & I. Co. v. Hall & Farley, 152 Ala. 262, 44 So. 592, references to numerous cases may be found in which it has been held that since the statute of amendment it is no objection that new matter or claims, vary the

form of defendant's liability or the description of the transaction on which the liability is predicated, or enlarge the quantum of relief sought, provided such matters grow out of the transaction alleged in the original bill. In the case before us there is no departure from the transaction alleged in the original bill; the relief sought is the same, viz. restitution of the lands described; nor is there any repugnancy between the averment of the original bill that appellee's intestate was insane and that of the amendment setting up facts from which a resulting trust will be inferred. The facts are different, but they are not repugnant; they authorize the relief prayed in both cases, viz. restitution, though the amended bill does recognize defendant's right to be reimbursed for his outlay. Of that, we assume, there will be no complaint. Our conclusion as to this feature of the case is that the court did not err when it overruled the demurrer to the amended bill for inconsistency and repugnancy. Ex parte Delpey, 188 Ala. 449, 66 So. 22.

■ Appellant insists that relief ought to be denied on the facts averred in the amended bill for the reason that proof of them would involve a disregard of the statute of frauds. We have referred to a letter alleged to have been written by defendant to appellee, Mistress Burgin, in which he admits his holding of the property for her. But that was after the main transaction and not a part of it. The letter, if put in evidence, will afford proof of the facts on which the equity of appellee's bill will depend, but cannot, of itself, become the basis of relief. From the facts averred a resulting trust may be inferred. When defendant agreed to advance the money to redeem the property, then and there promising to hold it for appellee, so again to speak of the complaining widow of the deceased grantor, or for her and the heirs at law of deceased, a trust resulted which the court of equity will enforce. Bates v. Kelly, 80 Ala. 142; Moss v. Winston (Ala. Sup.) 118 So. 739,[1] and the cases there cited. Appellant's brief notes the fact that there is no averment in the bill to the specific effect that defendant lent to James B. Burgin or to appellee any amount of money for any purpose and insists that an absolute obligation to repay must have been incurred as a part of the original transaction in order to give rise to a resulting trust and that no such obligation can be inferred from the facts alleged. The bill avers: "That the said Z. T. Rudulph did agree with the said James B. Burgin, now deceased, that if the said James B. Burgin and wife, Pauline E. Burgin, would execute and deliver to him, the said Z. T. Rudulph, a transfer and assignment of their statutory right of redemption, he, the said Z. T. Rudulph, would furnish the money with which to effect such

redemption from the said Mrs. M. E. Johnson and would hold the said lands in trust for the said James B. Burgin and Pauline E. Burgin upon the understanding and agreement that, upon repayment to the said Z. T. Rudulph of all amounts so advanced by him with lawful interest and charges thereon, the said Z. T. Rudulph would reconvey the said lands to the said James B. Burgin or Pauline E. Burgin as he might be directed upon redemption." From the facts alleged a loan must be inferred, and, while there is no allegation that the money was advanced as a loan, the facts alleged lead to no conclusion other than that the transaction was a loan, for it is averred that repayment was to be made with interest. Bates v. Kelly, supra. In the case of an advance there arises the relation of debtor and creditor. Webster's Intern. Dict. Since the case of Montgomery v. McNutt, 214 Ala. 692, 108 So. 752, does not appear to have attracted the attention of counsel on either side, we reproduce the opinion in part as follows:

"There is a wealth of decisions on the subject involved. 'The clear result of all the cases, without a single exception,' says Judge Story, 'is that the trust of the legal estate * * * results to the man who advanced the purchase money. This is a general proposition, supported by all the cases, and there is nothing to contradict it.' 3 Story's Eq. (14th Ed.) § 1597."

We think that appellee must be regarded as advancing the purchase money for the redemption of the property, for, while that money came out of appellant's pocket, it so came in response to the Burgins' promise to repay and on that consideration only. In other words, appellant lent the money with which the Burgins redeemed the property, taking the title in appellant. The Burgins became the real purchasers. Lile's Equity Jurisprudence, p. 55.

Resuming the quotation:

"The principle 'has its origin in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the money means the purchase for his own benefit, rather than for that of another, and that the conveyance in the name of the latter is a matter of convenience and arrangement between the parties for some collateral purpose.' The trust arises by operation of law, and may be proved by parol, without offending the statute of frauds, which extends to and embraces only trusts created or declared by the parties, or the rule that a written instrument may not be contradicted, varied, or altered by parol. Lee v. Browder, 51 Ala. 288. The distinction between such cases as Patton v. Beecher, 62 Ala. 579, and Brock v. Brock, 90 Ala. 86, 8 So. 11, 9 L. R. A. 287, where it was held that the mere parol promise by the grantee in a deed, absolute on its face, to hold for the use of the grantor, will

___

[1] 218 Ala. 364.

not take the conveyance out of the statute, and the case here under consideration, is pointed out in Long v. [Mechem] 142 Ala. 412 [38 So. 362]. These principles are abundantly sustained by the decisions of this court. Harden v. Darwin, 66 Ala. 55; Lahman v. Lewis, 62 Ala. 129; Bidd v. Hunter, 79 Ala. 351; Heflin v. Heflin, 208 Ala. 69, 93 So. 719. The cases all agree that proof of payment by the party seeking the benefits of these principles, in order to lay the foundation of a resulting trust, must be clear and convincing. Pom. Eq. Jur. (4th Ed.) § 1041, note (b)."

As for the rest, we quote from Lile's Equity Jurisprudence, p. 59:

"It is agreed by all the courts that if the circumstances raise the implication of a resulting trust, the fact that there was an express parol agreement for a trust, will in nowise serve to alter the presumption of the implied trust, even in those jurisdictions in which section 7 of the statute prevails. If a trust is implied from the surrounding circumstances, it must follow that additional proof of an express parol agreement for a trust (in real property)—non-enforceable (in most states) because of the statute—cannot weaken the legal presumption of an implied trust. Indeed, it is probable that in a large majority of instances, resulting trusts of the first class, now under consideration, are accompanied by such an oral agreement."

Our conclusion is that the bill adequately avers a resulting trust and was immune to the attack of the demurrer. No necessary purpose would be served by the requirement of an allegation that the agreement between Burgin and Rudulph was oral or in writing. Presumptively it was oral, nor did the Statute of Frauds (Code 1923, § 6917) require it to be in writing, though security of performance in such cases would suggest a writing. In Patton v. Beecher, 62 Ala. 579, Brock v. Brock, 90 Ala. 86, 8 So. 11, 9 L. R. A. 287, and Tillman v. Kifer, 166 Ala. 403, 52 So. 309, and in some of the other cases by which appellant places store there was no allegation of a loan. They are definitely apart from the question of law presented by the demurrer in this case.

Some part of the brief for appellant is given to the proposition that the conveyance from Burgin to Rudulph was not a mortgage because no defeasance was expressed therein. We agree with counsel that there was no mortgage, and therefore see no reason why there should be any discussion at this point.

The opinion of the court here is that the decree overruling appellant's demurrer was correctly rendered as against the grounds upon which it was based.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

