# Southern States Fire & Casualty Insurance Co. v. De Long.

### *Bill to Rescind and Cancel Stock Purchase.*

(Decided May 16, 1912. 59 South. 61.)

1. *Corporations; Sale of Stock; Fraud; Burden of Proof.*—One who sues to rescind a purchase of corporate stock because of misrepresentations inducing the purchase, must carry the burden of proving false representations as to material facts, and a reliance thereon, and mere expressions of opinions are insufficient.

2. *Same; Evidence.*—The evidence examined and held not to justify a finding of the fraudulent misrepresentations charged.

3. *Same; Rescission.*—The facts stated, and it is held that complainant is not entitled to rescind the contract for the purchase of the capital stock because of his failure to act with promptness on a discovery of the fraud.

4. *Contracts; Rescission; Fraud.*—One who desires to rescind a contract on the ground of fraud must act with promptness on the discovery of the fraud, and use all reasonable diligence to disaffirm the contract.

5. *Evidence; Letters.*—A letter stating that the matter would be taken up by the fiscal agent of the corporation on his return from a trip, signed by a person who added to his name the words "Ass't. Sec'y.," was not admissible where there was no evidence to show what the matted referred to was, and who the person signing the letter was.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Adrian DeLong against the Southern States Fire & Casualty Insurance Company to rescind and cancel a contract of purchase of stock in said corporation on the ground of fraud and misrepresentation. There was a decree for complainant and respondent appeals. Reversed and judgment rendering dismissing bill.

LAMKIN & WATTS, for appellant. The representations must have been of a material existing fact on

which the person relied, and must have been false in order to rescind.—Story's Equity, sec. 199. The facts do not warrant rescission for fraud.—Thompson on Corporations, sec. 722.

GORDON & EDDINGTON, for appellee. The bill was sufficient, and the facts supported its allegations.— Secs. 4298-9, Code 1907; *Martin v. Martin*, 35 Ala. 560; *Perry v. Boyd*, 126 Ala. 168.

SIMPSON, J.—The bill in this case is filed by the appellee to rescind and cancel a purchase of shares of the capital stock of defendant company on account of misrepresentations claimed to have been made by the agent from whom the stock was purchased. The claim is that said agent told the plaintiff, as an inducement to purchase the stock, that the company had declared or agreed upon a dividend of 25 per cent. which would be paid to the stockholders in the following October (the purchase being made in June), also that one Adam Glass of Mobile had purchased 100 shares of said stock, all of which is denied by the respondent.

The plaintiff testifies that the agent, D. J. Marshall, told him that a dividend had been declared of 25 per cent., and on cross-examination states: "I couldn't quote his exact language, but he led me to believe it would be paid—25 per cent. My recollection is he said it had already been declared, and the stock would be advanced $5 per share at that date. I am clear on the point that the stock would be advanced $5 a share from October 1st, and there would be a dividend paid of 25 per cent. My recollection is that he said it had already been declared—it had been decided that they would pay that much." He also states that said agent stated to him that Adam Glass had bought 100 shares

One R. L. Simmons, who was, at the time of the purchase, a partner of complainant, testifies that he was present when the conversation took place between complainant and said Marshall; that Marshall "stated that there was a dividend—was due to be payable in October following"; also that Adam Glass had bought 100 shares. He also states that he saw complainant sign a written application for the stock, besides signing the note, while the plaintiff says that he did not sign any application.

Marshall denies positively that he made any statement about 25 per cent. dividends; says that complainant was an old insurance man; that the company had been organized only for one month; that he told complainant so, and that he knew no such dividend could have been declared in that time; that no agents had been appointed, and that he appointed complainant an agent to represent the company at Citronelle, where he lived; that he merely showed him some statistics of what other companies had made, and showed him a letter from Adam Glass stating that he had bought "a block of stock" and "recommending the proposition."

Adam Glass testified that he did have 10 shares of the stock which had been given him by a man named Cozart, but when persons asked him about it he said he had traded furniture for it, and that he thought the stock was worth $10 per share (complainant had paid $25).

Said Marshall also testified that, after De Long and others had given their notes, the bank refused to discount them until it could ascertain that the purchasers were satisfied, as one of them had expressed discontent, that accordingly they had a meeting at De Long's office (De Long being present), at which many questions were asked, and the matter fully gone over, said Sim-

mons also, and others named, being present, after which they all expressed themselves as satisfied and instructed the bank to discount the notes, which was done.

H. M. Vanderputte, who lives at Cullman and is a stockholder in the company, corroborates Marshall in regard to the meeting at Citronelle in the latter part of June, 1910, stating that he (witness) just happened to be there in his travels; that, on being asked by those assembled what he thought of the stock, he stated that he had bought some, considered it a good investment, and, although it might not pay anything for two or three years, it would eventually pay well; that Marshall was questioned at that meeting and stated that he thought in a few years it would pay 15 per cent., but said nothing about any 25 per cent. dividend. Marshall stated to them that the company had just started business the month before (May).

The burden is on the complainant to produce testimony to reasonably satisfy the court that the false representations were made and acted upon. Mere expressions of opinion are not sufficient; there must be false representations as to material facts.—1 Thompson on Corporations (2d Ed.) § 721, pp. 879, 880.

The complainant offered no rebutting testimony to contradict or explain the facts testified to by Marshall and Vanderputte, and, taking into consideration the improbability of any one's saying or supposing that a company, not over a month old, had declared a dividend of 25 per cent., the fact that complainant does not profess to remember exactly what was said, the fact that Adam Glass did own a "block of stock," and the relative interests of the witnesses testifying, we hold that the complainant has not sustained the burden of proof on him, especially in view of the principle of law that requires him who would rescind a con-

tract to act with promptness, upon discovery of the fraud, and, "as soon as he learns the truth, with all reasonable diligence to disaffirm the contract or abandon the transaction and give the other party an opportunity of rescinding it and of restoring both of them to their original position."—2 Pom. Eq. Jur. (3d Ed.) § 897, p. 1902.

The stock was bought in June and the note made on the 24th of June, 1910. There is no proof that the complainant ever made any demand for a rescission until the filing of the bill in this case, November 28, 1910, although he testifies that he learned of the untruth of the statement before he received the stock; that, after learning of these matters, he "took the stock up and put it in the bank," and never wrote anything about it to the company. It is true he states that he authorized his attorneys to take the matter up with the company and rescind the contract, but he does not show when that was, and it is not shown when, if ever, any demand was made by said attorneys upon the company.

It is true that at the end of complainant's testimony it is stated that "complainant attaches a letter, written to the respondent by G. & E. in behalf of complainant, and the letter written to G. & E. by the respondent with reference to an offer to rescind the sale of stock"; but this proposed testimony was objected to on obvious grounds, and, as a matter of fact, there is nothing to show that any such letters or copies of them were produced or identified except that there appears "Exhibit A," with the name of the respondent printed at the top, addressed to said G. & E., dated August 15, 1910, which acknowledges the receipt of "your several letters of August 13th," and states that "this matter" will be taken up by the fiscal agent when he returns

from his wedding trip, and signed, "J. N. Major, Asst. Secy." There is no evidence to show what the matter referred to is, who J. N. Major is, nor anything else to make the letter legal evidence in this case.

For these reasons the chancellor erred in granting the relief prayed in the bill. The decree of the court is reversed, and a decree will be here rendered, dismissing the bill.

Reversed and rendered. All the Justices concur.