# Manfredo, *et al. v.* Manfredo.

*Bill to Remove Administration from Probate to Chancery Court.*

(Decided January 14, 1915.   Rehearing denied February 4, 1915.
68 South. 157.)

1. *Husband and Wife; Conveyances; Estate Conveyed; Possibility of Reverter.*—Section 3425, Code 1907, is declaratory of the common law, and preserves it intact, except as changed by the provisions of sections 3423 and 3424, Code 1907, and a deed by a wife to her husband and his heirs and assigns forever, provided he survives her, but if she survives him, the title shall revert to her absolutely, and, conferring on him full power during the wife's life to convey the property, vests a fee absolute in him, since a possibility of reverter is not a remainder or an estate within the meaning of sections 3423, and 3425, Code 1907.

[Manfredo, et al. v. Manfredo.]

2. *Same; Conveyance by Wife to Husband.*—Under sections 4492, 4497, Code 1907, the wife is legally competent to make a gift to her husband.

3. *Same; Presumption; Burden of Proof.*—Under section 4497, Code 1907, the husband relying on a gift to him by the wife must show that the transaction was voluntary and well understood.

4. *Deeds; Validity; Undue Influence.*—The mere presumption of undue influence exerted by a grantee over the grantor, arising from confidential relationship between the parties may be overcome by proof of competent, independent advice and counsel, or by any other evidence which shows that the transaction was not affected by any abuse of confidence.

5. *Same; Conveyance Between Husband and Wife.*—Under the facts in this case the chancellor properly set aside the deed from the wife to the husband.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Bill by Guiseppe Manfredo and another, against Celestina Manfredo to remove an administration from the probate to the chancery court and to determine their interest in said property, with a cross-bill by respondent seeking to set aside certain deeds. From a decree dismissing the original bill and granting the prayer of the cross-bill, complainants appeal. Affirmed.

See, also, 182 Ala. 247, 62 South. 522.

JAMES A. MITCHELL, and SAMUEL B. STERN, for appellant.

A. & F. B. LATADY, for appellee.

SAYRE, J.—Victor Manfredo, in his lifetime, conducted a restaurant in Birmingham, his wife, Celestina, assisting him as cashier, in that capacity receiving payments from customers and paying the bills of the business. In 1902 he conveyed the property in controversy to his wife in fee simple on the recited consideration of love and affection. In 1906 she conveyed the property back to him in consideration of love and affection,

limiting his title by the following language: "To have and to hold unto the said V. Manfredo, his heirs and assigns, forever, if he survives me; but if I survive him, then the title to said real estate hereby conveyed shall revert to and become vested in me absolutely. This conveyance is made and accompanied with full power in the grantee during my lifetime to sell, alien, convey or mortgage said real estate hereby conveyed, in all respects as if this deed conveyed a fee-simple title, the intention hereof being that no right of reversioners or remaindermen shall in any wise interfere with such sale, alienation, conveyance or incumbrance."

At that time the property was worth $20,000 to $25,-000. Now it is worth more.

Immediately after the execution of the deed from appellee to her husband, he conveyed to her, in consideration of love and affection, an undivided one-half interest in the property, limiting her title as follows: "To have and to hold unto the said Celestina Manfredo, her heirs and assigns forever, if she survives me, but if I survive her, then the title to said real estate hereby conveyed shall revert to and become vested absolutely in me. This conveyance is made and accompanied with full power in the grantee (during my life) to sell, alien, convey or mortgage the said real estate hereby conveyed in all respects as if this deed hereby conveyed a fee-simple title, the intention hereof being that no right of reversioners or remaindermen shall in any wise interfere with such sale, alienation, conveyance or incumbrance."

Victor Manfredo died in March, 1912, leaving no children nor any lineal descendants, and shortly afterwards letters of administration were granted to his widow, Celestina. In August of the same year appellants, Giuseppe and Orsola Manfredo, brother and sister of

deceased and his sole heirs, filed the original bill in this cause to remove the settlement of decedent's estate into the city court of Birmingham, sitting in equity, and to have their interest therein decreed to them. The conveyances stated above were exhibited with appellant's bill, and by virtue of them appellants claimed by descent from Victor a half interest in the real estate therein described, subject to the widow's rights of dower and homestead, if any such rights she had.

In her demurrer, filed June 28, 1913, appellee took this ground against the bill, among others: "Because it affirmatively appears from complainants' said bill of complaint, and the exhibits thereto, that the estate of Victor Manfredo, deceased, owns no right, title or interest in or to said real estate therein described, or any part thereof."

This demurrer was incorporated in an answer which defendant prayed might be taken and treated as a cross-bill, and which contained the following averment and prayer: "Respondent admits * * * that at the time of his (Manfredo's) death there were of record the deeds and papers exhibited with the bill in this cause, but respondent says that her said deed to her husband was and is void, as she received no consideration from her husband for the said conveyance, and respondent prays that the same may be decreed to be void and of no effect."

By decree of July 2, 1913, overruling the demurrer to the original bill, it was expressly held in the court below that the power of disposition given by the deed to Victor Manfredo converted the estate granted him into a fee absolute, and this irrespective of what may have been differently intended by the parties.

In December following, defendant (appellee) amended her answer and cross-bill, adding an averment, to

state its substance in brief, that she had made the deed to her husband upon the faith of the representation and assurance of her husband's attorney that the land would revert to her in the event she survived her husband, she knowing nothing to the contrary and being accustomed to defer to her husband's direction in matters of business, and that but for such representation and assurance she never would have executed the deed in question. On final submission on pleading and proof a decree was rendered granting the relief prayed in the bill, and from that decree this appeal has been taken.

(1) It was correctly held in the court below that appellee's deed, if allowed to operate at all, vested a fee absolute in her husband. Apart from the power of disposition conferred upon the grantee, the deed would have vested in the grantee a fee determinable upon an uncertain event, leaving in the grantor a bare possibility of reverter. A possibility of reverter is not a remainder nor is it an estate within the meaning of sections 3423 or 3424 of the Code, which preserve, except as to purchasers and creditors, future estates limited upon estates accompanied by an absolute power of disposition. This conveyance, then, is controlled by the common law and by section 3425, which is declaratory of the common law of the subject, and preserves it intact except as changed by section 3423 and 3424, the result being that it must be held to have vested an absolute fee in the grantee, and this, to repeat the language of the learned judge below, irrespective of what may have been intended by the parties.—Wshb. Real Prop., §§ 170, 1512; *Hood v. Bramlett,* 105 Ala. 660, 17 South. 105, and cases cited.

Courts seek to give effect to the intention of the parties in the construction of instruments in writing, and in section 3416 of the Code, to which counsel for appel-

[Manfredo, et al. v. Manfredo.]

lee has adverted, they are especially enjoined so to do in the construction of conveyances of land. There can be no doubt that it was intended in this case that the land should revert to appellee in the event she survived her husband, as she did in fact, and that would have been the result had not the absolute power of disposition been given to the grantee. But the rule of the common law and of the statute is that the absolute power of disposition given to the grantee destroyed the reversion and converted the grantee's estate into an absolute fee. The common law and the statute have declared the rule for the construction of such powers, and by that rule, binding upon the parties so long as the validity of the conveyance is not impeached, and upon the courts as well, the creation of the power affected the estate granted, and its effect was not left to be determined by the choice of the grantee whether or not the power should be executed.—*Cutting v. Cutting,* 86 N. Y. 522.

(2, 3) This brings us necessarily to the question whether the deed should be set aside upon the ground alleged in the amended cross-bill. Now that "the wife has full legal capacity to contract as if she were sole, except as otherwise provided by law" (Code, § 4492), and "the husband and wife may contract with each other" (Code, § 4497), the deed in question is not void upon its face, as the court below properly held in effect when sustaining the demurrer to appellee's cross-bill in its original shape. The transaction under review took the form, and was no doubt in fact, a gift —the conveyance was wholly voluntary. An executed gift is regarded as an executed contract.

In the present state of the law it cannot be questioned that the wife is legally competent to make a gift to her husband. The wife, subject to certain statutory restrictions which, other than one to be presently not-

ed, have no bearing on this case, now enjoys the natural right of every competent owner to make such disposition of her property as she may think will best subserve her interest or gratify her feelings. But husband and wife do not deal at arm's length. Naturally, usually, and properly the relation between them is one of trust and confidence, and the statute quoted above in part (Code, § 4497), declaring the law as it would have been declared by the courts in any event, further provides that: "All contracts into which they enter are subject to the rule of law as to contracts between persons standing in confidential relations."

In this case, then, the husband, and those claiming by descent from him, must be bound by a due application of the principle which, upon grounds of public policy based upon consideration of the too frequent untoward course of such things, affect such relations.

Stating the principle with reference to the case before us, and paraphrasing the language of Judge Story, quoted in *Ralston v. Turpin,* 129 U. S. 663, 9 Sup. Ct. 420, 32 L. Ed. 747, it is for the common security of womankind that gifts procured by husbands, and purchases made by them, from their wives, should be scrutinized with a close and vigilant suspicion, and that the court, upon the appearance of the slightest circumstance of suspicion, should require of the husband satisfactory proof that the transaction resulted from the "pure, voluntary, and well-understood" act of the mind of the donor. And yet, the court must disclaim any jurisdiction to annul such gifts, when based upon the generosity of the donor, or to weigh the value or amount of the consideration as in and of itself determining the validity of transactions when property has been the subject of sale or barter between parties so related.— *Harris v. Tremenheere,* 15 Ves. 34.

[Manfredo, et al. v. Manfredo.]

(4) The mere presumption of undue influence, once raised in any case, may be overturned by proof of competent independent advice and counsel, or by any other evidence which satisfies the judicial conscience that the transaction was not affected by any abuse of confidence. *Scarbrough v. Scarbrough,* 185 Ala. 468, 64 South. 105; *Jones v. Brooks,* 184 Ala. 115, 63 South. 978. The call for such advice is urgent in all cases in which the great inequality of the parties is presumed by reason of the peculiar nature of the relation, or is proved in fact, but that it is not a sine qua non, see *Zimmerman v. Frushour,* 108 Md. 115, 69 Atl. 796, 16 L. R. A. (N. S.) 1087, and note, 15 Ann. Cas. 1128, where a great number of the adjudicated cases is collected.

(5) Now to the facts of this case in addition to those that have already been made to appear: At the time of the deed the wife had been advised that her hold upon life was precarious; but there is nothing to indicate that her mind or will had been in the least impaired. After the lapse of six years she is still alive, and testifies that the relation between herself and her husband was always cordial and affectionate. If she had blood relatives or dependents for whom she might have been expected to care, that fact does not appear. The effect of the transaction was that she gave back to her husband a half interest in a property which he had previously given to her. We do not know with whom the suggestion originated, or what passed between them in advance of the immediate occasion on which the deeds were executed and delivered; but it is clearly shown by the testimony of appellee and of the attorney who prepared the deeds that these parties together went to take advice from the attorney to whom the husband had been accustomed to go with his legal affairs; that he, acting for them both in utmost good

faith, with perfect impartiality, advised them that in the event she survived her husband the entire property would revert to her under the terms of the deeds which he, endeavoring to carry out their wishes, prepared for them; that thereupon the parties being so advised and in perfect accord, the deeds were executed; and that thereafter appellee had no reason to suspect that the attempted limitation in her favor was inoperative until the question was raised by the bill in this case and decided adversely to her by the court below in its ruling on the demurrer. In this we find nothing to arouse suspicion. If the result in this cause turned solely upon the inquiry as to whether the gift was the pure and voluntary act of the donor, we think no satisfactory reason could be assigned for its annulment.

But, beyond controversy, there was a mistake. Appellee, and her husband, too, for that matter, were not ignorant of her antecedent existing legal rights in the subject of the gift. So far as appears, the parties to the deed knew those rights, and it is certain that they were perfectly agreed as to what they intended to accomplish, and the language employed was precisely adapted to the end in view. They were mistaken in respect only of the legal import in part of the transaction into which they entered. The general rule and practice of the court is not to relieve against such mistakes, for the obvious reason that: "If ignorance of the law were generally allowed to be pleaded, there could be no security in legal rights, no certainty in judicial investigations, no finality in litigations."

Mr. Pomeroy in his work on Equity Jurisprudence, notwithstanding occasional cases to the contrary, lays down the rule as well settled that a simple mistake of law, though common to both parties to a transaction, cannot justify the interposition of equity.—Vol. 2, §

846. The decisions of this court cited by appellants are
to this general effect. But the learned text-writer ad-
mits this modification: That if the mistake of law is
not pure and simple, but is induced or accompanied
by other special facts giving rise to an independent
equity on behalf of the person who has suffered by the
mistake, such as inequitable conduct of the other party,
the court will interpose its aid.—Sections 842, 843.

The special consideration which brings appellee's
cross-bill within the exceptional rule stated above is that,
her deed being the expression of a pure gratuity, no
equities in favor of the donee or those claiming under
him by descent having arisen by reason of any valua-
ble consideration passing from him, the transaction is
either good or it is wholly bad, and it would be inequit-
able for the grantee to retain a gift based in part upon
the donor's clearly proved misapprehension of its legal
effect. The donor was no lawyer, and the language of
the deed must have evinced to her understanding the
idea that the property would revert to her in the event
she survived her husband. The testimony aliunde fully
sustains the conclusion that she did so understand it.
That the attempted provision for a reverter cannot ope-
rate according to its terms results from a rule of law
of such nature that for its understanding the laity must
be expected to rely on professional skill and advice. If
the donee would accept the gift, it was his duty, in any
event, to correctly advise the donor that the plainly
expressed provision for a reverter was inoperative, and
this duty rested upon him with peculiar obligation, in
view of the confidential relation which existed between
them. And it is of no consequence in the way of avoid-
ing the necessity for correct advice on such a point in
a case of pure gift, that the donee was himself ignor-
ant and acted in good faith on the mistaken advice of

[Manfredo, et al. v. Manfredo.]

an attorney.—*Garnsey v. Mundy,* 24 N. J. Eq. 243; *Mulock v. Mulock,* 31 N. J. Eq. 594. In these cases may be seen some discussion of the authorities sustaining the equity of this cross-bill. In the last-named case the court found actual fraud, but aside from that, it stated the following principle of law: "A deed of gift will always be declared invalid by a court of equity, even in a case unsmirched by fraud, whenever it is clearly proved that the deed does not, in a material respect, conform to the intention of the grantor, or that he executed it under a total misapprehension as to its effect" (citing the cases).

We have no authority for holding, as counsel for appellant suggests, that the mistake was of no consequence, and that appellee would have made the deed even had she been correctly informed of its legal effect. There is no evidence to that effect; and, if there was, to so hold would be, in substance, to decree the specific performance of an agreement to give, which the courts will not do. It follows that the decree vacating and annulling the deed must be affirmed.

The court below further decreed that the original bill be dismissed, with costs, and that the disposition of the personal property of the estate of Victor Manfredo, deceased, should be made in accordance with the statute and in the course of administration in the probate court. This decree is, in all things, affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and DE GRAFFEN-RIED, JJ., concur.

ON REHEARING.

PER CURIAM.—The application for rehearing is overruled.

ANDERSON, C. J., and McCLELLAN and MAYFIELD, JJ., concur.