(115 So. 256)

**CROWDER v. CROWDER.    (4 Div. 326.)**

Supreme Court of Alabama.    Jan. 26, 1928.

1. Deeds ⬯196(3)—Transactions, such as deeds between husband and wife, are subject to rules applicable to contracts between persons in confidential relations (Code 1923, § 8272).

Relation of husband and wife is a confidential one, and all contracts between them, such as deed to husband, are subject to rules applicable to contracts between persons standing in confidential relation, by express terms of Code 1923, § 8272.

2. Deeds ⬯210—Evidence held to show that deed of wife to husband was without consideration.

Evidence *held* to show that deed of wife conveying real property to husband was executed without consideration and was deed of gift.

3. Deeds ⬯211(4)—Evidence held to show that deed of wife conveying realty to husband was procured by undue influence, warranting cancellation.

Evidence *held* to show that deed of wife conveying real property to husband was procured by undue influence of husband, warranting cancellation, since there were circumstances of suspicion casting burden of proof on husband, and husband failed to discharge such burden.

4. Cancellation of instruments ⬯34(1)—Cancellation of deed of wife conveying realty to husband held not barred by laches despite lapse of 9 years.

Cancellation of deed of wife conveying real property to husband, on ground of undue influence, *held* not barred by laches despite lapse of 9 years before commencement of suit, where there was no change in condition or relation of parties rendering relief inequitable, since laches is not founded upon passage of time, but upon change in condition or relation of property or parties.

Appeal from Circuit Court, Pike County; W. L. Parks, Judge.

Bill in equity by Iola Crowder against J. W. Crowder for an accounting and for cancellation of a deed to real property. From a decree dismissing the bill, complainant appeals. Reversed and remanded.

Eugene Ballard, of Montgomery, and L. H. Brassell, of Troy, for appellant.

The burden was upon the husband to show that the deed from his wife was fair, free, and voluntary on her part. 30 C. J. 694, 696. The deed should be set aside. Manfredo v. Manfredo, 191 Ala. 322, 68 So. 157; Harraway v. Harraway, 136 Ala. 499, 34 So. 836; Pomeroy's Eq. Jur. (4th Ed.) 2081.

D. A. Baker, of Troy, for appellee.

The complainant's suit is barred by laches. Lockwood v. Fitts, 90 Ala. 150, 7 So. 467; Sheffield Co. v. Neill, 87 Ala. 158, 6 So. 1; Gilmer v. Morris, 80 Ala. 78, 60 Am. Rep. 85; Howle v. Birmingham Co., 95 Ala. 389, 11 So. 15. The evidence shows the conveyance was made in good faith, and the decree should stand.

GARDNER, J. Appellant was formerly the wife of appellee and filed the bill in this cause seeking to have set aside, as procured by undue influence, a deed executed by her to the defendant, on July 25, 1917, to 300 acres of land and a dwelling house and lot, all situated in Pike county, Ala. At the time of the execution of the deed, complainant and defendant were living together as husband and wife. They were divorced March 3, 1926.

Upon consideration of the cause for final decree on pleadings and proof, the learned chancellor dismissed the bill, and from the decree rendered complainant has prosecuted this appeal.

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] In harmony with current authority (30 Corpus Juris, 673; 2 Pom. Eq. Jur. § 963), and in furtherance of the express statutory declaration embodied in section 8272, Code of 1923, this court holds that the relation of husband and wife is a confidential one, and that all contracts into which they enter are subject to the rules of law as to contracts by and between persons standing in confidential relations. In Manfredo v. Manfredo, 191 Ala. 322, 68 So. 157, speaking to the principle of law here applicable, the court said:

"It is for the common security of womankind that gifts procured by husbands, and purchases made by them, from their wives, should be scrutinized with a close and vigilant suspicion, and that the court, upon the appearance of the slightest circumstance of suspicion, should require of the husband satisfactory proof that the transaction resulted from the 'pure, voluntary, and well-understood' act of the mind of the donor."

Speaking to the question of the burden of proof in such cases, this court in Harraway v. Harraway, 136 Ala. 499, 34 So. 836, used the following language, here pertinent:

"There are relations in life, in which influence is acquired by the one party, and confidence reposed by the other—relations of which we usually speak as confidential—that open the way and afford opportunity for impositions, or undue influence, and yet, rather close the door to, and render difficult, the detection of its exercise. Such are the known relations of trustee and cestui que trust, guardian and ward, attorney and client, principal and agent, husband and wife. * * * When, in such relation, the party subject to imposition, to undue influence, enters into a contract with, or makes a disposition of property to the other, from which detriment is sustained by the one, and benefit derived by the other, upon principles of public policy, there is no presumption of consent; the act or contract does not itself import it. The law casts the burden of proving the transaction fair and just, and the free consent of him who sustains the detriment, and is subject to the influence, upon the party who takes the benefit, and in whom trust was reposed."

[2] It but remains to give application to these well-recognized principles of law to the facts as here presented, to which very brief reference will be made. The parties to this suit were married in January, 1913. In January, 1914, a boy was born to this union, but complainant had a daughter by a former marriage. In the fall of 1916 complainant's father died and soon thereafter was a division of the estate among the heirs, complainant being given the property here involved. Complainant insists in her testimony that defendant importuned her frequently to deed him the property, that he wanted it to take care of and made reference to the fact that complainant had another child who would get her part, and at one time threatened to take their boy and leave her; that he would get angry, and on one or two occasions struck her with his hand; that she and defendant made two visits to an attorney at Troy, and each time she insisted she did not want to deed him the property, and the attorney advised a postponement of the matter, and on one of these occasions complainant began crying in the presence of the attorney. The attorney testified in the case and corroborated complainant in this latter respect, and, being cross-examined upon the matter of complainant having tears in her eyes, stated:

"My impression at the time was that they were caused by the matter she was then talking about."

This was in 1917, and prior, of course, to the execution of the deed. On July 25, 1917, the date the deed was executed, complainant and defendant were in Troy. They resided at Linwood, some several miles distant, and complainant testified that on the return trip defendant turned from the usual route and went by the house of Mr. Howard, a justice of the peace. Complainant insists she still remonstrated and repeated she did not want to sign the deed when he informed her of the purpose of going by Mr. Howard's was to have her execute the conveyance. Mr. Howard came to the car where the deed was signed and acknowledgment taken, and he states he did not pay any attention as to whether she looked like she had been crying, and that he noticed nothing unusual in her demeanor. The deed had been prepared by defendant at his home on his typewriter, and we think it clear complainant did not know he had the deed with him until he notified her of the purpose of going the unusual route home.

One Carmack testified to a conversation with defendant to the effect that he was going to try and get possession of what his wife had and take the boy, for if he did not do this the boy would not get anything, but the child by a former marriage would get it all. Defendant denies this conversation, but the witness was not impeached and appears to be without interest in the result of the suit. J. H. Parish, a justice of the peace, lived a mile from Linwood and testified defendant approached him on one occasion with a request that he talk with his (defendant's) wife "about deeding her land to him," stating also, "he asked me to advise her to deed a part, if not all, to him." We do not find any denial by defendant of this conversation.

The deed recites a consideration of $2,500 "and other valuable consideration." The house and lot were of the value of $300 and the 300 acres of land valued by defendant at $8 per acre. The property here in question appears to represent the major portion, if not practically the entire estate of complainant, which she inherited from her father. Upon his direct examination defendant made

no effort to show the payment of any consideration for the execution of the deed. Complainant stated she had not received any consideration therefor. Upon his cross-examination he testified the consideration named was paid "after the deed was made, * * * within something like 12 or 18 months after it was made." Two of the checks produced as on payment of the consideration are for the sum of $16.50 and $13, respectively, and one for $294, marked "for ring for wife," bears date July 6, 1917, but further discussion of this phase of the case is unnecessary, as it is very clear the recited consideration was never paid, nor was such the intention of the parties. We are fully persuaded it was a deed of gift.

[3] There are here presented many circumstances of suspicion of undue influence. Complainant and defendant occupy the confidential relation of husband and wife, and the burden of proof was cast upon defendant to prove the transaction was fair and just and untainted by a violation of the confidence reposed. Defendant makes no serious effort to discharge the burden of proof thus resting upon him, further than to deny threats or mistreatment on his part. There is no proof of any independent advice and counsel for the wife or any other evidence tending to show the transaction was not affected by an abuse of confidence. The defense that the consideration was paid has utterly failed.

As said in the Manfredo Case, supra:

"It is for the common security of womankind that gifts procured by husbands, and purchases made by them, from their wives, should be scrutinized with a close and vigilant suspicion."

The transaction here attacked will not stand the close scrutiny of a court of equity, and must fall.

There is testimony in the record to the effect that the cause of the separation of the parties in June, 1920, was due to an act of infidelity on the part of complainant, out of which grew a conviction of defendant and subsequent imprisonment for manslaughter, and two letters, without date, written by complainant to defendant while imprisoned, were offered by defendant. Counsel for appellee lays much stress upon the expression in one of these letters to the effect that respondent should not think she did not want him to have anything she had, for she had proved the contrary by her self-denial, saying:

"I had rather you had it than any one else. * * * I am willing to die for you any time, and when I am gone I want you and Wendall [their son] to have everything I've got, I wish I could make you understand my feeling toward you better than you do, and I think you wouldn't be so hard on me."

But it must be remembered that when this letter was written the parties were still husband and wife. It discloses anxiety on her part as to her own health and that of her son, and the burden her heart carried. It contains a pathetic appeal of a wife scorned and cast aside by the husband, for recognition, reconciliation, and a reunited family circle. The letter was written some years after the execution of the deed, and shed little light on the major question in this case as to whether or not defendant has met the burden resting upon him of showing that the transaction was fair and just and free from undue influence.

[4] The parties were divorced March 3, 1926, and this bill was filed March 12, 1926. There has been no such change in condition or relation of the parties that would render relief to complainant inequitable. It is insisted that relief should be barred by laches, but we think the following excerpt from First National Bank v. Nelson, 106 Ala. 535, 18 So. 154, sufficiently answers this contention:

"The doctrine of staleness of demand relied on as a defense in this case, cannot, under the facts shown in the bill, be sustained. Laches, as has been well said, does not, like limitation, grow out of the mere passage of time, but it is founded upon the inequity of permitting the claim to be enforced—an inequity, founded upon some change in the condition or relation of the property or the parties. Galliher v. Cadwell, 145 U. S. 368 [12 S. Ct. 873, 36 L. Ed. 738]. Whenever such manifest inequity does not appear, 'a case does not fall within the operation of the rule, if the suit is for the recovery of property, real or personal, unless it is apparent on the face of the bill, that for the period prescribed as a bar to the corresponding legal remedies, there has been a possession hostile to the title the complainants assert.' "

The testimony here presented has been carefully considered by the court in consultation, and the conclusion reached that complainant is entitled to the relief she seeks by a cancellation of the deed of July 25, 1917, a copy of which is attached as an exhibit to the bill.

That portion of the bill seeking an accounting for certain personal property is presumably abandoned, as not here insisted upon, and properly so, as the proof was insufficient to that end.

The decree dismissing the bill will be reversed and the cause remanded for further proceedings in conformity to the view herein expressed.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.