(133 So. 703)

## KELLY v. TATUM et al.

## TATUM v. KELLY.

3 Div. 924, 924–a.

Supreme Court of Alabama.
March 5, 1931.

Rehearing Denied April 23, 1931.

Rushton, Crenshaw & Rushton, of Montgomery, for appellants.

Steiner, Crum & Weil, Thos. B. Hill, Jr., and Hill, Hill, Whiting, Thomas & Rives, all of Montgomery, for appellant and cross-appellant.

FOSTER, J.

The bill on behalf of William and Augustus Tatum against appellant Mrs. Kelly is based upon the theory of a resulting trust in the nature of an equitable mortgage on the authority of our cases, among others, of Montgomery v. McNutt, 214 Ala. 692, 108 So. 752; Moss v. Winston, 218 Ala. 364, 118 So. 739; Pollak v. Millsap, 219 Ala. 273, 122 So. 16, 65 A. L. R. 110; O'Rear v. O'Rear, 220 Ala. 85, 123 So. 895; O'Rear v. O'Rear, 219 Ala. 419, 122 So. 645; Rudulph v. Burgin, 219 Ala. 461, 122 So. 432; Snead v. Dooley, 221 Ala. 598, 130 So. 222.

These complainants and respondent Mrs. Kelly were children of William Tatum, Sr., deceased, whose will provided that his estate should be kept together until the youngest child became thirty years old, and then divided among his children then living. There

were ten of them, and they all lived until the youngest became thirty, February 22, 1929. Respondent J. W. Kelly, having married a daughter, became the main stay of the large family in respect to counsel and advice, and was later appointed receiver of the estate, which he kept together and managed until the time of distribution. It was a large and valuable estate.

In the meantime and some fifteen years before the period of distribution, these complainants, having become financially involved, mortgaged their interest. They were then adjudged bankrupts. They claim in their bill and by their testimony that J. W. Kelly agreed with them to take care of the mortgage debt for them and collect their share of the income until the time of distribution, and then adjust the claim; but that he permitted the mortgage to be foreclosed and purchased the property at the sale in his wife's name, and then also purchased their right of redemption out of the bankrupt court; that he kept the estate together under the will until the time of distribution, 1929; and that their share of the net income had more than paid the amount advanced, etc.

Their interest was contingent and dependent upon their continued life until the time of distribution. Whether their interest would ever vest, apparently depended upon their living to the time of distribution. Though the precise nature of their interest was said to be uncertain, it was held subject to alienation. Tatum v. Com. Bank & Trust Co., 185 Ala. 249, 64 So. 561. This of course lessened the value of such interest. To protect him against this hazard, J. W. Kelly insured the life of one of these complainants for his benefit.

■ The bill does not allege in so many words that the agreement was that J. W. Kelly should lend them a definite amount of money for a definite time and then be repaid and as security should receive their income from the property, or that the mortgage should be transferred to him or title taken as security for the debt specific in amount, maturity, interest, and other detail. But it does allege that he agreed to take over the debt and pay it, and repay himself out of the rents and incomes to which these complainants were entitled before distribution, when he would be repaid any balance due him out of their share, and subject to his claim they would own their share at that time.

The time of distribution was fixed in the will to be when the youngest child arrives at thirty years of age. Until then there was to be no distribution, but all the children should share in the income. The amount promised by J. W. Kelly, as there alleged, was definitely ascertainable, and due not later than a time fixed, which was bound to occur, though it may be postponed for some fifteen years, and in the meantime he was to receive the share of the income due these complainants to be applied on the debt.

If these allegations are true, we see in them nothing lacking to constitute a loan of money, and a debt thereby created in its fullest sense. The fact that the lender could not force its repayment as a personal debt until the time of distribution arrived, merely postponed until then its due date, except that in the meantime he could apply upon it their share of the income. When the due date arrived he could enforce his claim in the usual and ordinary manner. So that if the proof established as true the allegations of the bill, it was sufficient to show an advance of money creating a resulting trust in the nature of an equitable mortgage.

■■ Both these complainants testified to the facts substantially as alleged, and Mr. and Mrs. Kelly denied them. They were examined orally in open court, and the result as found on such testimony has the qualities of the verdict of a jury. Therefore, it should not be vacated, regardless of what we may think is a mere preponderance of the evidence.

■ While the agreement as alleged may not have included the amount paid into the bankrupt court to prevent its exercise of the statutory right of redemption, it was an amount paid by such trustee-mortgagee, which we think should be held to be for the benefit of the beneficiary mortgagor by reason of the trust relation then existing between them, and a proper amount to be charged on the security of the equitable mortgage. We therefore discover no reason to disagree with that aspect of the decree which thus declares the rights of the complainants William and Augustus Tatum.

United in the bill with William and Augustus Tatum is a claim by another brother Carley Tatum directed against J. W. Kelly. There is no demurrer testing the sufficiency of the bill as a whole or in its different aspects, or for uniting the distinct claims. The basis for relief by Carley is set forth in the fifth paragraph of the bill, not necessary here to repeat. The court decreed against him, and he has prosecuted an appeal.

After Carley's mother died, and he had received some money from her estate, and being about nineteen years old, with his disabilities removed, he went off and spent up his money, and found himself in Chicago without a job and no money. He then began an urgent appeal to Mr. Kelly for help, first by long distance telephone for a loan, as he testified. After this 'phone call their negotiations were entirely by telegrams and letters, which were in evidence. They show quite conclusively

that Mr. Kelly's negotiations were for an outright purchase of this interest.

We agree with the evident conclusion of the circuit court that the claim of Carley that he understood the transaction to be a loan is not sustained by the written evidence of their negotiations. We are not willing to differ with the circuit court in refusing to accept the theory that when such communications throughout refer to the transaction as a sale for a price, and the execution of a deed, the words did not mean to express such idea but meant something else. Their language is plain, unambiguous, and can convey but one thought—a purchase and sale. We think that the decree is correct in evidently holding that the proof did not sustain that aspect of Carley Tatum's claim that the deed was security for a debt, but it shows that a sale was made and intended.

■■ The fifth paragraph also alleges that while confidential relations existed between them with J. W. Kelly as the dominant party, by undue influence upon Carley Tatum, he fraudulently procured from the latter a deed conveying property worth, to wit, $15,000 for $500. Such averments of undue influence are sufficient on which to predicate relief. Cox v. Parker, 212 Ala. 35, 101 So. 657. And when united with a separate and distinct aspect for relief, although not stated in the alternative, it is only necessary to prove the essentials of one of such aspects sufficiently certain to justify relief appropriate to it. Shipman v. Furniss, 69 Ala. 555, 563, 44 Am. Rep. 528; Louisville & N. R. R. Co. v. Mothershed, 97 Ala. 261, 12 So. 714; Louisville & N. R. Co. v. Coulton, 86 Ala. 129, 5 So. 458; Cent. of Ga. v. Isbell, 198 Ala. 469, 73 So. 648; So. R. Co. v. Lee, 167 Ala. 268, 52 So. 648; Birmingham R. & E. Co. v. Baylor, 101 Ala. 488, 13 So. 793; Louisville & N. R. Co. v. Malone, 200 Ala. 380, 76 So. 296.

We will therefore consider the right to relief on that aspect, though we think the bill is apparently framed on the theory that the transaction was a loan of money. We treat it otherwise, however, because counsel have argued that aspect as well as the other, and upon the theory that confidential relations existed between Mr. Kelly and Carley Tatum, without deciding that fact directly.

■ Under such circumstances the rule is well known that when the dominant party receives a benefit or advantage from a transaction between them during the continuance of such relation, there is a presumption of undue influence, but the dominant party may overcome that presumption by proof, reasonably satisfactory, that the transaction was in every respect just, fair, and equitable, or that the other party had independent advice of a nature which had the effect of interrupting for the transaction the dominance of the relation. Verner v. Mosely, 221 Ala. 36, 127 So. 527; Scott v. Hardyman, 218 Ala. 515, 119 So. 224.

■ As stated in the case of Verner v. Mosely, supra, seasonable application must be made to vacate the deed alleged to be procured by undue influence, which is of the nature of a fraud, and should be treated in this respect upon the same theory.

Carley Tatum, soon after the deed was executed, joined the Army and served in the War and was mustered out about 1921 in California, where William Tatum, his brother, resided, and remained there until the time arrived for a division of the estate, February 22, 1929. In the meantime he was not receiving any income, though the property bore a substantial amount of income during that period, and he made no claim for income and made no claim that the deed was not valid or was procured by undue influence, so far as the record shows. During this time there was no contact with Mr. Kelly in any respect, and it cannot be said that confidential relations in any sense continued after the execution of the deed if they existed before. Assuming that Carley Tatum knew and understood that it was an unconditional deed and not intended merely as security for a loan, as we must on this aspect of the case, no excuse is offered for his delay in asserting his claim of undue influence. Fowler v. Ala. Iron & Steel Co., 164 Ala. 414, 51 So. 393; Gayle v. Pennington, 185 Ala. 53, 64 So. 572.

■ Rescission of a contract on account of fraud or undue influence must be asserted promptly after the fraud is discovered or after the undue influence ceases to operate. Romanoff M. Co. v. Cameron, 137 Ala. 214, 33 So. 864; So. States Fire & Cas. Ins. Co. v. De Long, 178 Ala. 110, 59 So. 61; Stephenson v. Allison, 123 Ala. 439, 26 So. 290; 2 Pom. Eq. § 897. It is further said in 2 Pom. on Equity § 965, p. 2094, in this connection:

"When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject-matter under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity."

660

Of course, there is no occasion to do this as long as the grantor continues in the enjoyment of the property, and there is nothing to be demanded of the other party. Treadwell v. Torbert, 122 Ala. 297, 25 So. 216; Ogletree v. Rainer, 152 Ala. 467, 44 So. 565; Woodlawn Realty Co. v. Hawkins, 186 Ala. 234, 65 So. 183; 4 Pom. on Eq. § 1454. And as long as the undue influence, presumed to result from the confidential relations, continues, it is not laches nor acquiescence to fail to assert the invalidity of the deed. Verner v. Mosely, supra; Spiva v. Boyd, 206 Ala. 536, 90 So. 289; 4 Pom. on Eq. §§ 1447, 1448.

In the absence of the existence of a deed or upon its invalidity, Carley Tatum was due to receive one-tenth of the net income annually for fifteen years, less the $500 he was paid by Mr. Kelly. This income is shown to average approximately $300 net annually. So that for about thirteen years he permitted Mr. Kelly to have this income under his deed, with no claim that it was procured by deception nor by misrepresentation, nor was there any act to lull him into repose, and with no contact between them while this long delay continued. The effect of relief now would be to require Mr. Kelly to account for this income and to surrender the property which has doubtless greatly enhanced in value. At the time of the transaction we know judicially that business conditions were in deplorable state due to the declaration of the World War; and it also appears that the condition of this title was in doubt due to the terms of the will, and, in all events, its permanency depended upon whether he should continue to live until the youngest child should arrive at the age of thirty years. But he did live until the time of distribution arrived, and the title made thereby certain, and conditions greatly improved and value increased. They are facts which could not be foreseen in 1914, but on the existence of which Mr. Kelly took a chance. What was that chance worth then, in view of the fact that he could lessen some of it by life insurance at his own expense on the life of Carley? Now after these fifteen years when all chance is over, and during which Carley was not willing to take any of it upon his shoulders, his delay under such circumstances is an acquiescence. He cannot now be permitted to come forward and assert a right which he was not willing to assert when such chance was an important factor.

So that our conclusion is that the decree was in all respects proper in so far as complaint is made on the respective appeals.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.