25 So.2d 693

## COCHRAN v. COCHRAN.
### 7 Div. 853.

Supreme Court of Alabama.

April 11, 1946.

Roberts, Cunningham & Hawkins, of Gadsden, for appellant.

Irby A. Keener, of Centre, for appellee.

LIVINGSTON, Justice.

This is a bill of complaint filed by Mrs. Pearlie Cochran to cancel a conveyance of an undivided one-half interest in certain lands described in the bill, upon the ground that it was the product of undue influence exerted upon her by her husband, J. Marshall Cochran, the grantee in said conveyance. From a decree for respondent, the complainant presents this appeal.

The parties to this suit intermarried on December 17, 1916, and lived together as man and wife until about September 1944.

Mrs. Cochran obtained title to the farm lands here involved on November 19, 1923, through a division of her deceased father's estate, and she and her husband and children moved onto the property shortly thereafter.

In April 1927, Mrs. Cochran executed and delivered a deed conveying to her husband, J. Marshall Cochran, an undivided one-half interest in and to said lands for the recited consideration of five dollars. It is to cancel this deed the present bill was filed.

The case was submitted to the trial court upon the depositions of the parties and their witnesses. When causes are thus tried in the lower court, it is the duty of this Court to sit in judgment upon the evidence. Title 13, section 17, Code of 1940; Wood v. Foster, 229 Ala. 430, 157 So. 863; Pollard v. Simpson, 240 Ala. 401, 199 So. 560; Cryar v. Cryar, 243 Ala. 318, 10 So.2d 11; Wells v. Wells, 243 Ala. 533, 10 So.2d 853.

When the parties moved onto the lands of Mrs. Cochran, the improvements thereon were few and poor. The land itself was washed, run down, eroded and in a poor state of cultivation. Shortly after the conveyance by Mrs. Cochran to Mr. Cochran of an undivided one-half interest in the lands, the parties borrowed $1800 from the Federal Land Bank. They built a five or six room house on the land, and which was equipped with electric lights and running water. They improved the barn, built several chicken houses, and smoke house, pasture fences and other fences; terraced the lands in cultivation; cleared other land and terraced it, and set out an orchard. In short, took a very much run down place and made a good farm out of it.

Mr. and Mrs. Cochran had seven children; two of these children, and perhaps three (the record not being entirely clear) were born after Mrs. Cochran deeded to

Mr. Cochran an undivided one-half interest in the land. Mr. Cochran had two sons by a former marriage, one four and the other six years of age at the time these parties were married. They lived with complainant and respondent until they reached their majority.

The record shows that these parties were industrious people, and their children were likewise industrious. The children were given fair educational advantages; at least on a par with the advantages given by other parents to their children in the same community.

The parties to this cause separated in the latter part of the year 1944. Mrs. Cochran filed suit for a divorce on the ground of cruelty, and Mr. Cochran denied the charge.

The only real conflict in the testimony is in regard to the influences motivating the execution and delivery of the deed here sought to be cancelled. Mrs. Cochran's testimony is to the effect that she executed and delivered the deed to Mr. Cochran on account of his insistence, coercion, duress and threats, threats to quit work and whip her unless she gave him a deed to one-half interest in the land.

On the other hand, Mr. Cochran's testimony is to the effect that the deed was voluntarily executed and delivered; that it was Mrs. Cochran's idea; that she wanted a new home, and offered to give him a deed to an undivided one-half interest in the lands if he would borrow the money and build the home and improve the place.

■ In Kelly v. Tatum, 222 Ala. 655, 133 So. 703, 706, it was said:

"Rescission of a contract on account of fraud or undue influence must be asserted promptly after the fraud is discovered or after the undue influence ceases to operate. Romanoff Min. Co. v. Cameron, 137 Ala. 214, 33 So. 864; Southern States Fire & Cas. Ins. Co. v. De Long, 178 Ala. 110, 59 So. 61; Stephenson v. Allison, 123 Ala. 439, 26 So. 290; 2 Pom.Eq. § 897. It is further said in 2 Pom. on Equity § 965, p. 2094, in this connection:

■ "'When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject-matter under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity.'

■ "Of course, there is no occasion to do this as long as the grantor continues in the enjoyment of the property, and there is nothing to be demanded of the other party. Treadwell v. Torbert, 122 Ala. 297, 25 So. 216; Ogletree v. Rainer, 152 Ala. 467, 44 So. 565; Woodlawn Realty [& Development] Co. v. Hawkins, 186 Ala. 234, 65 So. 183; 4 Pom. on Eq. § 1454. And as long as the undue influence, presumed to result from the confidential relations, continues, it is not laches nor acquiescence to fail to assert the invalidity of the deed. Verner v. Mosely, supra (221 Ala. 36, 127 So. 527); Spiva v. Boyd, 206 Ala. 536, 90 So. 289; 4 Pom. on Eq. §§ 1447, 1448."

■ And in Ray v. Ray, 238 Ala. 269, 189 So. 895, 896, the Court said:

"In Crowder v. Crowder, 217 Ala. 230, 115 So. 256, the principle of law which governs transactions like the one now before us is thus stated: 'In harmony with current authority (30 Corpus Juris 673; [41 C.J.S., Husband and Wife, § 120]; 2 Pom.Eq.Jur. § 963), and in the furtherance of the express statutory declarations embodied in section 8272, Code of 1923, [Code 1940, tit. 34, § 74] this court holds that the relation of husband and wife is a confidential one, and that all contracts into which they enter are subject to the rules of law as to contracts by and between persons standing in confidential relations.

■ "In Manfredo v. Manfredo, 191 Ala. 322, 68 So. 157, speaking to the principle of law here applicable, the court said: 'It is for the common security of womankind that gifts procured by husbands, and purchases made by them, from their wives, should be scrutinized with a close and vigilant suspicion, and that the court, upon the appearance of the slightest circumstance of suspicion, should require of the husband satisfactory proof that the transaction resulted from the "pure, voluntary, and well-understood" act of the mind of the donor.'"

■ In this case there are many facts and circumstances which tend to show that

the execution and delivery of the deed by Mrs. Cochran to Mr. Cochran was the voluntary act of Mrs. Cochran. The testimony of Mr. and Mrs. Cochran touching this question is in direct conflict. No other witness assumed to testify as to what motives or influences prompted the execution and delivery of the deed. The transaction took place many years ago, and its validity must be determined as of that time.

We have carefully considered all of the testimony, and are to the conclusion that the execution and delivery of the deed here involved was the free and voluntary act of complainant. The court below reached the same conclusion, and the cause is due to be affirmed, and it is so ordered.

Affirmed.

GARDNER, C. J., and BROWN and SIMPSON, JJ., concur.