This is an appeal from a judgment entered in an ejectment suit filed by Wayne and Betty Cole. The Circuit Court of Marion County, Alabama, ruled against the Coles and in favor of Racetrac Petroleum, Inc.
The facts of this case are undisputed by the parties, and are set forth below.
Clyde and Louise Lacy purchased the 1.46 acres of land involved in this action on June 3, 1971. Shortly thereafter, Clyde Lacy erected a house on the land, which he and his wife Louise used as their dwelling. On August 21, 1972, Clyde Lacy leased a .32-acre portion of the 1.46 acres, along with the filling station he had built on the property, to The Oil Well Company, Inc.,[1] for ten years, with the lease period to begin on October 21, 1972, and end on October 20, 1982. As part of the agreement, The Oil Well Company had the option at the end of the lease to extend the lease for ten more years, ending October 20, 1992. Louise Lacy did not sign the lease agreement. The lease, which required a rent payment of $125.00 monthly to the lessor, was recorded in the Probate Judge's office on August 29, 1972.
Racetrac paid Lacy $125.00 per month for rent of the property until January 26, 1973. On this date, Clyde Lacy and Louise Lacy sold their 1.46 acres, including the .32 acres, to the appellants, Wayne and Betty Cole. The deed of conveyance from the Lacys to the Coles refers to the August 21, 1972, lease, stating: "The above-described lands are SUBJECT TO a lease in favor of The Oil Well Company, Inc., executed by Clyde Lacy dated August 21, 1972."
For a period of nine years and nine months, Racetrac paid the monthly rent of $125.00 to the Coles pursuant to the lease. The Coles accepted each of these payments. Then, on September 28, 1982, Racetrac exercised its option and renewed the lease dated August 21, 1972, for an additional ten years beginning October 21, 1982, and ending October 20, 1992. After receiving the notice from Racetrac of its intention to renew the lease, the Coles requested that Racetrac vacate the premises on or before November 21, 1982, unless or until a new lease was executed.
The parties stipulated that Racetrac has made all the monthly rental payments in conformance with the August 21, 1972, lease. Two of these payments, those for October and November of 1982, were returned to Racetrac by Betty Cole. Racetrac has continued to send its payments each month to the Coles, who have kept the checks but have not cashed any of them.
On November 30, 1982, Wayne and Betty Cole filed an ejectment action against Racetrac in order to regain possession of the property. After considering the pleadings and testimony of the witnesses, the trial court found that Racetrac was lawfully in possession of the .32-acre tract of land, and would continue to be until the lease expired on October 20, 1992. On November 3, 1983, the Coles filed a timely motion to set aside the decree and enter a decree in their favor. The trial court never ruled on the motin. This appeal followed.
The dispositive issue on appeal is whether the trial court erred in finding that Racetrac has a valid lease on the land until *Page 95 
October 20, 1992. We hold that the court did not so err; the judgment appealed from is affirmed.
In its decree, the trial court found that Racetrac has a valid lease on the .32 acres until October 20, 1992, "according to the terms of the lease dated August 21, 1972." In addition, the court found "that the plaintiffs and defendant are bound by all the terms and conditions of said lease agreement dated August 21, 1972." The trial court did not set forth in its decree how it reached its conclusion; however, we are bound to sustain the judgment if there is a valid basis to do so.
Appellants argue that the homestead law of Alabama was not complied with. The Coles maintain that since the 1.46 acres of land that was purchased from Clyde and Louise Lacy was their homestead, any lease concerning the property must have been signed by both spouses or it was void, or at least voidable, at the time of its execution. This Court addressed the issue of the alienation of homestead property in Inman v. Goodson,394 So.2d 915 (Ala. 1981), and stated:
 When the owner of a homestead which is greater in value than $2,000, or in area than 160 acres, sells a portion thereof, leaving, including the dwelling and land contiguous thereto, the maximum value or area allowed by law for the homestead, this amounts to the selection of a homestead to the exclusion of the alienated tract, and the provisions of the Code (section 4161 [1907 Code, later § 6-10-3, Code 1975]) with respect to the alienation of homesteads have no application.
394 So.2d at 917; quoting Williams v. Kilpatrick, 195 Ala. 563,70 So. 742 (1916). The Court went on to say:
 It is clear that a spouse does not have to sign a conveyance of property by the other spouse which is in excess of and which reserves unto them an amount of property with a value equal to or greater than that required to constitute homestead.
Inman v. Goodson, 394 So.2d at 918 (Ala. 1981).
After Clyde Lacy leased the .32-acre portion of the 1.46 acres, the home and land remaining easily exceeded the $2,000 statutory limit. Therefore, the lease agreement signed only by Clyde Lacy and not Louise did not violate the homestead requirements.
Appellants also claim that, since there is nothing in writing from Louise Lacy concerning her undivided one-half interest in the property, her interest has never been leased. They seem to be arguing that Louise Lacy somehow dissented from the leasing of the .32-acre tract by her husband, and that the lease cannot be upheld by the court because she never intended for her interest in the property to be leased. The evidence presented at trial, however, does not support this position. To the contrary, the evidence at trial, together with the reasonable inferences the judge could have drawn therefrom, shows that Louise Lacy ratified the lease through her actions subsequent to its execution.[2] Appellants did not offer any proof that even suggested that Louise Lacy desired to invalidate the transaction, or that she took any action whatsoever to avoid the lease. Rather, she affirmatively ratified the lease when she joined with her husband and deeded the entire 1.46 acres, including the lease and all the rights and benefits thereunder, to the Coles in January of 1973. Her failure to object to the execution of the lease, coupled with her subsequent consent to transfer the 1.46 acres of land, along *Page 96 
with the lease, evince Louise Lacy's approval of the August 21, 1972, lease.
Not only did Louise Lacy's conduct support the trial court's decree, but the Coles also acted in a manner consistent with the court's conclusion.
 When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject matter under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity.
Cochran v. Cochran, 247 Ala. 588, 25 So.2d 693 (1946). Such is the case with Wayne and Betty Cole. From January 26, 1973, until October 1982, the Coles never complained that the lease was invalid without Louise Lacy's signature. For almost ten years, pursuant to the terms of the lease dated August 21, 1972, the Coles accepted monthly rental payments from Racetrac. Naturally, Racetrac was led to believe that it was operating under a valid lease. The Coles have received the benefits under the lease since January 1973, and may not now, for the first time, claim that the lease is invalid. To allow the Coles to succeed would do an injustice to Racetrac, which has followed the terms of the lease for almost ten years. We cannot allow this to happen.
For the above-stated reasons, the judgment of the trial court is due to be, and hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
[1] The Oil Well Company is the predecessor to Racetrac Petroleum, Inc.
[2] "Ratification. In a broad sense, the confirmation of a previous act done either by the party himself or by another; as, confirmation of a voidable act. . . . The adoption by one, as binding upon himself, of an act done in such relations that he may claim it as done for his benefit, although done under such circumstances as would not bind him except for his subsequent assent. It is equivalent to a previous authorization and relates back to time when act ratified was done, except where intervening rights of third persons are concerned."Black's Law Dictionary, 1135 (rev. 5th ed. 1979).